Billy J. POPE and Linda Pope,
Appellants/Cross-Respondents,

v.

David STOLTS, et al.,
Respondent/Cross-Appellant.

Nos. 50308, 50413.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 6, 1986.

Motion for Rehearing and/or Transfer
Denied June 10, 1986.

Application to Transfer Denied
July 15, 1986.

James Michael Asher, Clayton, for appellants/cross-respondents.

John G. Doyen, Gary Paul, Clayton, for respondent/cross-appellant.

DOWD, Presiding Judge.

Cross-appeals from summary judgment proceeding. Bill J. Pope and Linda Pope [hereinafter plaintiffs] appeal from a judgment for Farmers Insurance Company Inc., [hereinafter defendant] on issue of coverage of uninsured motorist provision on Granada automobile. Defendant cross-appeals from a judgment for plaintiff on issue of coverage of uninsured motorist provision on Mustang automobile. We affirm.

The cause was submitted to the trial court on a stipulation of facts. The pertinent facts are as follows: on the afternoon of January 2, 1984, Patty Barker's Mustang broke down on the eastbound shoulder of Old Gravois Road, facing eastward. Summoned by his wife, Mark Barker arrived shortly thereafter and parked his Granada on the shoulder of eastbound Old Gravois Road facing westward with the front bumper of the automobile parallel to the front bumper of the Mustang—approximately three to four feet apart. Plaintiff, Billy J. Pope, a neighbor of the couple, came to assist them with the disabled car. He parked his Cordoba behind Patty Barker's Mustang facing eastward.

Plaintiff was unable to locate the hood release on the Granada, so Mark Barker handed him the jumper cables and released the hood himself. At the time of the accident, plaintiff was leaning over the opened

hood of the Mustang with his stomach against the grill and his legs against the bumper, holding the jumper cable terminals in his hands. A car driven by David Stolts, an uninsured motorist, traveling in the westbound lane crossed into the eastbound lane and collided with the rear end of the Granada. As a result of the collision, plaintiff sustained personal injuries when he was propelled over the hood of the Mustang and onto an embankment next to the shoulder of the road.

The Barkers had separate insurance policies on the Mustang and Granada with defendant containing identical provisions regarding coverage for liability and uninsured motorists.

The court granted coverage on the Mustang and denied coverage on the Granada. Plaintiff's appeal and defendant's cross appeal followed.

■ On appeal, plaintiff contends that he was an occupant insured of the Granada under defendant's uninsured motorist coverage for the reason he was "upon" the Granada. Plaintiff principally relies upon *Robson v. Lightning Rod Mut. Co.*, 59 Ohio App.2d 261, 393 N.E.2d 1053, 1055 (1978) to argue that because he was within a "reasonable geographical perimeter" of the Granada and his acts were "related" to it he was therefore "upon" the Granada under a liberal construction of the policy language. We find no patent ambiguity in the language of defendant's policy. It provides, "occupying means in or upon or entering in or alighting from." Part II, C, Definitions. The words employed are commonly used and understood, and are to be applied as commonly used and understood. *State Farm Mut. Auto. Ins. v. Farmers Ins.*, 569 S.W.2d 384, 386 (Mo.App.1978). It is quite plain to us that plaintiff was not "upon" the Granada as the term is commonly used and understood.

Plaintiff next contends that he was "using" the Granada with the permission of the named insured as the term is employed in the liability provision of defendant's policy.

Defendant's liability provisions provide in relevant part as follows:

To pay all damages the insured becomes legally obligated to pay because of:

(a) Bodily injury to any person, and/or

(b) damage to property arising out of the ownership, maintenance or use, including loading or unloading, of the described automobile or a non-owned automobile.

The unqualified word "insured" includes:

(a) With respect to the described automobile,

(1) the named insured, and

(2) any other person or organization legally responsible for its use, provided the actual use of such automobile is by the named insured or with his permission.

We have carefully examined the authorities cited to us by the parties and have independently researched the question of when injuries arise out of the "use" of the insured automobile for purposes of liability coverage. The cases addressing "use" have involved analytically distinct situations, and therefore, each case must be decided on its facts.

■ The words "arising out of" are ordinarily understood to mean "originating from," or "having its origin in," "growing out of" or "flowing from." *Cameron Mut. Ins. Co. v. Ward*, 599 S.W.2d 13, 15 (Mo. App.1980). Accordingly, our courts have recognized the term "use" in an omnibus clause imports more than the act of driving in or riding in an automobile. *Bituminous Cas. Corp. v. Aetna Life & Cas.*, 599 S.W.2d 516, 518 (Mo.App.1983); *See Oberkramer v. Reliance Ins. Co.*, 650 S.W.2d 300, 302–303 (Mo.App.1983). Many decisions have in effect recognized use as going beyond the narrow meaning of the direct mechanical operation performed by the driver and as encompassing the broader concept of employing or putting the vehicle into one's service by an act which assumes at anytime—with the consent of the owner or his agent—the supervisory control or guidance of its movements. *Id.; Waltz v. Cameron Mut. Ins. Co.*, 526 S.W.2d 340, 344 (Mo.App.1975). Although it is not required that the "use" of the automobile be the direct and proximate cause of the inju-

ry in the strict legal sense of causation permeating general tort law, there must be some causal connection between an injury and the use in order for there to be recovery. *Cameron Mut. Ins. Co. v. Ward, supra,* at 15. *See also, Annotation,* "Automobile Liability Insurance: What are Accidents or Injuries 'Arising out of Ownership, Maintenance or Use' of the Insured Vehicle." 15 A.L.R. 4th 10.

■ Plaintiff argues that § 379.203 mandates that defendant's uninsured motorist coverage be as broad as the coverage provided for bodily injury and property damage. Even assuming that this argument is correct, we conclude under the facts here that the causal connection between the plaintiff's "use" of the Granada to jump start the Mustang and the injuries received insufficient to find that they arose out of his "use" of the Granada as the term is employed in the liability section of defendant's policy. The point is denied.

Defendant cross-appeals from the judgment for plaintiff on the issue of uninsured motorist coverage on the Mustang automobile. The precise issue presented is whether plaintiff was "upon" the Mustang and thus covered as an occupant insured under the terms of defendant's policy.

Defendant's uninsured motorist coverage, Part II, C, provides in relevant part:

To pay all sums which the owner or operator of an insured motor vehicle would be legally responsible to pay as damages to the insured because of bodily injury sustained by the insured, caused by the accident, and arising out of the ownership, maintenance or use of such insured vehicle.

The "insured" is defined therein as "the named insured or a relative, (2) any other person while occupying an insured motor vehicle." It further provides, "Occupying means in or upon or entering in or alighting from."

There is no Missouri case directly on point.[1] Defendant asks us to adopt the interpretation of the Virginia Supreme Court in *Pennsylvania National Mutual Ins. Co. v. Bristow,* 207 Va. 381, 150 S.E.2d 125 (1966), in which the court found coverage lacking under similar facts, concluding that the good samaritan was not "upon" the insured automobile because there was no connection between his act of leaning over the motor and reaching into the engine cavity to check wiring and "occupancy" of the car. We decline to adopt the Bristow court's restrictive reading of the policy language.

■ The rules of construction applicable to insurance contracts require that the language used be given its plain meaning and if the language is unambiguous the policy should be enforced according to such language. *Robin v. Blue Cross Hosp. Service Inc.,* 637 S.W.2d 695, 698 (Mo. banc 1982). The words employed in defendant's definition of occupying are not ambiguous, and are to be applied as commonly used and understood. *State Farm Mut. Auto. Ins. v. Farmers Ins.,* 569 S.W.2d 384, 386 (Mo.App.1978). Webster's Third International Dictionary (Unabridged) at 2517 (1976) defines "upon" as, inter alia, 1: on; 1a: upward so as to be on, [jumped upon a horse], b: in a high position on, [built a house upon a hill]. The word "on" is defined therein as 1a: a functional word to

---

1. We are not unmindful of *Turner v. Fidelity & Casualty Co. of New York,* 274 Mo. 260, 202 S.W. 1078 (1918) which is both factually dissimilar and involves policy language dissimilar to the case here. In *Turner* the assured was killed as he was standing on the ground cranking the engine of his automobile when it lunged forward and struck him. The court found no ambiguity in the pertinent policy language providing for double indemnity "if the bodily injury is sustained by the insured: ... (3) while *in or on* a private conveyance (excluding bicycles, motorcycles, saddle horses)." [Emphasis added] *Id.* at 1080. It rejected plaintiff's contentions that the term "on" should be construed to mean "at, adjacent to, near to, or alongside of" and that the words while "riding in or on a private conveyance" are implied by the language. *Id.* at 1080–1081. It found that the term "on" was to be construed as commonly used, signifying "at or in contact with the surface or upper part of a thing and supported by it." *Id.* at 1080. The court held that plaintiff, who was standing in front of the automobile and turning its crank with his right hand, was not "in or on" the automobile when he was killed, within the meaning of the terms of the double indemnity provision of the insurance policy.

indicate position over and in contact with that which supports from beneath, [the book is on the table, the house was built on an island], at 1574. Accordingly, we find that plaintiff was "upon" the Mustang automobile under the facts as stipulated by the parties. At the time of the accident, plaintiff was standing over the Mustang with his stomach resting against the grill of the automobile and his legs against the bumper, preparing to connect jumper cables to its battery. Furthermore, the use of the disjunctive "or" indicates that the words "in or upon or entering in or alighting from" are to be viewed as alternative conditions, any one of which standing alone would constitute occupying the insured automobile. *Herrick Motor Co. v. Fischer Oldsmobile Co.*, 421 S.W.2d 58, 66 (Mo. App.1977). We find under the circumstances before us that plaintiff was "upon" the Mustang because as that term is commonly used and understood it clearly encompasses the position he occupied in relation to the automobile. This point is denied.

The judgment is affirmed.

REINHARD and CRIST, JJ., concur.