Tammy and Charles CLARK, Appellants/Cross–Respondents,

v.

AMERICAN FAMILY MUTUAL IN-SURANCE COMPANY, Respondent/Cross–Appellant.

Nos. ED 80454, ED 80455.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 22, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 2002.

Application for Transfer Denied Jan. 28, 2003.

Mary & Neil Bruntrager, St. Louis, MO, for appellant.

Gary P. Paul, St. Louis, MO, for respondent.

Before WILLIAM H. CRANDALL, JR., P.J., SHERRI B. SULLIVAN, J. and GLENN A. NORTON, J.

PER CURIAM.

Plaintiffs, Tammy and Charles Clark (hereinafter "the Clarks"), brought an action seeking underinsured motorist coverage under two insurance policies issued to the Clarks by defendant, American Family Insurance (hereinafter "American Family"), for two vehicles. The Clarks appeal from the trial court's grant of partial summary judgment in favor of American Family and American Family cross-appeals from the grant of partial summary judgment in favor of the Clarks. We reverse and remand.

The facts are undisputed. Mr. Clark was a police officer who was assisting with an automobile accident on Highway 55. He had been a passenger in a police patrol car when it arrived on the scene at that accident; but he was outside of the car, setting out flares, at the time of the accident in this case. He was injured when an

automobile struck him as he was standing on the shoulder of the highway between the patrol car and the guardrail. He was not in contact with the patrol car. The driver of the vehicle was insured by Farmers Insurance Company (hereinafter "Farmers") and had automobile liability insurance coverage in the amount of $25,000.00. Farmers settled with the Clarks for the policy limit of $25,000.00.

The Clarks then sought underinsured motorist coverage under two policies with American Family: under their policy on Mr. Clark's Plymouth and also under Mrs. Clark's separate policy on her Toyota. Each vehicle was insured under a different policy, both of which were issued by American Family to the Clarks. Each policy had a separate number; and American Family charged separate premiums, each due at different times. Each of the policies had underinsured motorist coverage of $50,000.00 per person and $100,000.00 per accident. The Clarks sought a total recovery of $100,000.00. American Family denied coverage for that amount under the policies. American Family paid the Clarks $25,000.00, which was the $50,000.00 policy limit under the underinsured motorist provision in the policies, less the $25,000.00 payment from Farmers.

The Clarks brought the present action for underinsured motorist coverage for Mr. Clark's injuries (Count I) and for Mrs. Clark's loss of consortium (Count II). American Family moved for summary judgment, asserting that based upon the facts and the insurance policies, there could be no available recovery under the underinsured motorist coverage provision of either policy because each contained anti-stacking language. The Clarks filed a cross-motion for summary judgment, alleging that they were entitled to underinsured motorist coverage under both policies and that American Family was not entitled to set-off the amount recovered from Farmers. The trial court granted American Family's motion for summary judgment in part, finding that the Clarks were not entitled to stack their underinsured motorist coverage. The court also granted the Clarks' motion for summary judgment in part, finding that because of an ambiguity in the insurance policy, the amount recoverable by the Clarks under their underinsured motorist coverage was not to be offset by the amount recovered from Farmers. Both the Clarks and American Family appeal from that judgment.

On appeal, this court reviews the entire record in the light most favorable to the party against whom summary judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is frequently used in the context of insurance coverage questions. The interpretation of an insurance contract is a question of law. *Krombach v. Mayflower Ins. Co. Ltd.*, 785 S.W.2d 728, 731 (Mo.App.1990). Summary judgment is particularly appropriate if the issue to be resolved is construction of a contract that is unambiguous on its face. *Daniels Express and Transfer Co. v. GMI Corp.*, 897 S.W.2d 90, 91–92 (Mo.App. 1995).

The language used in an insurance contract must be given its plain meaning. *Robin v. Blue Cross Hosp. Service, Inc.*, 637 S.W.2d 695, 698 (Mo. banc 1982). An insurance policy is ambiguous where there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). Absent an ambiguity, an insurance policy must be enforced according to its terms. *Robin*, 637 S.W.2d at 698. A court may not use its inventive powers to

create an ambiguity where none exists or to rewrite a policy to provide coverage for which the parties never contracted, absent a statute or public policy requiring coverage. *Rodriguez v. General Acc. Ins. Co. of America,* 808 S.W.2d 379, 382 (Mo. banc 1991). The fact that the parties disagree over the interpretation of a term in an insurance policy does not render the term ambiguous. *Sanders v. Wallace,* 884 S.W.2d 300, 302 (Mo.App. E.D.1994).

Here, both policies contained the following language in pertinent part:

> **Underinsured motor vehicle** means a **motor vehicle** which is insured by a liability bond or policy at the time of the accident which provides **bodily injury** liability limits less than the limits of liability of this Underinsured Motorists coverage. . . .

LIMITS OF LIABILITY

The limits of liability of this coverage as shown in the declarations apply, subject to the following:

1. The limit for each person is the maximum for all damages sustained by all persons as the result of **bodily injury** to one person in any one accident.

2. Subject to the limit for each person, the limit for each accident is the maximum for **bodily injury** sustained by two or more persons in any one accident.

**We** will pay no more than these maximums no matter how many vehicles are described in the declarations, **insured persons,** claims, claimants or policies or vehicles are involved in the accident.

The limits of liability of this coverage will be reduced by:

1. A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an **underinsured motor vehicle.**

2. A payment under the Liability coverage of this policy.

3. A payment made or amount payable because of **bodily injury** under any workers' compensation or disability benefits law or any similar law.

**OTHER INSURANCE**

If there is other similar insurance on a loss covered by this endorsement, **we** will pay **our** share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an **insured person** while **occupying** a vehicle **you** do not own is excess over any similar insurance.

American Family argues that under *Rodriguez,* 808 S.W.2d at 383, the limits of liability clause in the Clarks' insurance policies with American Family would not permit stacking the underinsured motorist coverage of each policy. The limit-of-liability language in *Rodriguez* read as follows:

**LIMIT OF LIABILITY**

A. The limit of liability shown in the schedule for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

However, the limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. . . .

*Id.* at 381. The Missouri Supreme Court held that this language limiting liability for underinsured motorist coverage was not ambiguous or misleading. *Id.* at 382–383. The court stated that in the absence of public policy considerations, an insured and an insurer are free to define and limit coverage by their agreement. *Id.* at 383.

The Clarks, nevertheless, propose that *Rodriguez* can be distinguished where other provisions of the policy contradict or create an ambiguity in the anti-stacking language. They specifically point to the "Other Insurance" provision of their policies and claim that the provision creates an ambiguity and stacking therefore should be permitted.

█ The Clarks first argue that the second sentence of the Other Insurance provision creates an ambiguity in their policies, which construed in their favor, would allow them to recover under one underinsured motorist endorsement as "excess" insurance to the underinsured motorist coverage in the other endorsement—essentially allowing them to stack their two policies. They rely on *Niswonger v. Farm Bureau Town and Country*, 992 S.W.2d 308 (Mo. App. E.D.1999) to support this argument. In that case, a vehicle struck Mr. Niswonger, a police officer, while he was riding on a motorcycle. *Id.* at 310. At the time of the accident, Mr. Niswonger and his wife had three policies of insurance with the insurer, each policy being on a separate vehicle owned by them. *Id.* The "Other Insurance" clause in the underinsured motorist coverage endorsement of each policy provided in pertinent part:

> In the event there is other like or similar insurance applicable to a loss covered by this endorsement, this company shall not be liable for more than the proportion which this endorsement bears to the total of all applicable limits. However, *any insurance provided under this endorsement for a person insured while occupying a non-owned vehicle is excess of any other similar insurance.*

*Id.* at 315. (Emphasis added). This court reasoned that to the extent that the Other Insurance clause conflicted with the policy's prior anti-stacking language, it not only created an ambiguity in the policy, but also a reasonable lay person could look at the clause and think that the policy's anti-stacking provisions, which might normally and otherwise apply, do not apply in the particular situation where the insured is injured while "occupying a non-owned vehicle." *Id.* This court concluded that the anti-stacking provision in the policy was ambiguous in the particular factual situation where the accident occurred while Mr. Niswonger was occupying a non-owned vehicle. *Id.* This court concluded that in light of the ambiguity, the Niswongers were entitled to stack the underinsured motorist benefits in their insurance policies. *Id.* at 321.

Yet, the case before us is distinguishable from *Niswonger* on its facts. The Other Insurance clause language in *Niswonger* and in the case before us are virtually identical. Yet, unlike Mr. Niswonger, Mr. Clark was not "occupying a non-owned vehicle" at the time of the accident and thus was not entitled to the "excess over any similar insurance." The *Niswonger* decision specified that the ambiguity only arose in the factual situation where the accident occurred while the insured was "occupying a non-owned vehicle." The Clarks' insurance policies defined "occupying" as "in, on, getting into or out of, and in physical contact with." Here, Mr. Clark was outside of the non-owned police vehicle, standing on the shoulder of the road, when he was hit by another vehicle. He was not "in, on, getting into or out of, or in physical contact with" the patrol car.

Thus, he was not within the class of persons for whom *Niswonger* recognized that an ambiguity was created by the Other Insurance provision; and the Clarks were not entitled to the "excess of any other similar insurance" under the Other Insurance clause of their policies. Because Mr. Clark was not occupying a non-owned vehicle, the second sentence of the Other Insurance provision does not apply and cannot be used to create an ambiguity allowing stacking.

■ The Clarks also argue that the first sentence of the Other Insurance provision creates an ambiguity that would allow them to stack the policies. The first sentence is not limited to situations where the insured is occupying a non-owned vehicle and, therefore, it could apply to the Clarks even if the second sentence does not. Whether the first sentence creates an ambiguity is an issue that should be addressed separately from whether the second sentence does.

■ According to the anti-stacking provision, the maximum stated coverage is the limit of liability regardless of the number of policies involved. But, according to the first sentence of the Other Insurance clause, when there is more than one policy providing similar, i.e. underinsured motorist, coverage, the total amount the insured can recover is American Family's proportionate share of the total limits of liability. In cases like this—where American Family issues two separate policies for underinsured motorist coverage—the amount of the company's proportionate share under both policies will exceed the stated maximum of either policy. The stated maximum of each endorsement is $50,000.00. If each endorsement is considered, however-

er, the "total limit of all similar insurance" is $100,000.00 and American Family's proportionate share is $50,000.00 under one policy and $50,000.00 under the other.[1]

■ There are two possible ways to read the policy as to how to calculate coverage in this situation: (1) the insured may recover the proportionate share regardless of the stated maximum; or (2) the insured may only recover the stated maximum regardless of the proportionate share. This uncertainty renders the policy ambiguous, and thus the policy should be construed against the insurer. *See Rodriguez*, 808 S.W.2d at 382. When there are two reasonable constructions of a policy, the language will be viewed in the meaning that would ordinarily be understood by the person who paid for the policy. *Niswonger*, 992 S.W.2d at 316. The Clarks would assume that they are entitled to coverage under the underinsured motorist coverage of both policies, since they paid for both. Thus, the Clarks would resolve the conflict between the proportionate share language and the anti-stacking clause by viewing the proportionate share language as overriding the anti-stacking clause in situations where there is more than one policy providing underinsured motorist insurance. *See id.* This is a reasonable interpretation and should be the construction applied to these policies.

The cases addressing Other Insurance provisions similar to this one have not addressed the effect that the proportionate share language might have on an anti-stacking clause, focusing instead only on the second part of the provision relating to "excess" insurance. *See, e.g., Niswonger*, 992 S.W.2d at 316; *Zemelman v. Equity*

---

1. The Clarks maintain that the tortfeasor's insurance is also "other similar insurance." But, as American Family points out, "other similar insurance"—undefined by the policy— can only mean other underinsured motorist coverage, which the tortfeasor's liability coverage is not.

*Mutual Ins. Co.,* 935 S.W.2d 673, 677–678 (Mo.App. W.D.1996). There appears to be only one case addressing similar proportionate share language. *See Lang v. Nationwide Mutual Fire Ins. Co.,* 970 S.W.2d 828 (Mo.App. E.D.1998). *Lang,* however, is inapplicable to this case because it involved stacking underinsured motorist coverage with the tortfeasor's liability coverage under the proportionate share language, not stacking two underinsured motorist policies, as the Clarks propose here.

The trial court erred in granting American Family's motion for summary judgment in part, holding that the Clarks were not entitled to stack their underinsured motorist coverage under their two insurance policies. The Clarks' point on appeal is granted.

American Family's point on appeal charges error in the trial court's granting the Clarks' motion for summary judgment, finding that the amount recoverable from American Family under the underinsured motorist coverage was not to be offset by the amount recovered from Farmers, the tortfeasor's insurer. The trial court found that the Other Insurance clause provided that the underinsured motorist coverage was "in excess over all collectible insurance." The trial court relied on *Zemelman,* 935 S.W.2d at 673 and *Goza v. Hartford Underwriters Ins. Co.,* 972 S.W.2d 371 (Mo.App. E.D.1998) to support its conclusion that the insurance policy was ambiguous because the "excess" language in the Other Insurance clause could be construed by an average lay person to mean underinsured coverage was provided over and above that furnished by the tortfeasor's insurance. *Zemelman* and *Goza* contained the identical Other Insurance clause, which read as follows:

> [I]f there is other applicable similar insurance we will pay only your share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, *any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.*

*Goza,* 972 S.W.2d at 373. (Emphasis added).

These cases, however, are distinguishable from the present case in that the language in the Other Insurance clause in the Clarks' policies is different. The language in the Clarks' Other Insurance clause pertaining to excess coverage read, "[A]ny insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any similar insurance." As discussed above, Mr. Clark was not occupying a vehicle he did not own when the accident occurred and the excess coverage clause would not be applicable to the facts of this case.

The trial court erred in determining that the excess coverage language in the Other Insurance clause of the Clarks' policies did not permit a set-off of the amount recovered by the Clarks from Farmers. American Family's point is granted.

In conclusion, the Clarks are entitled to stack the $50,000.00 limit of underinsured motorist coverage in each of their two policies, for a total limit of $100,000.00. American Family's proportionate share under each policy of that total limit is $50,000.00. Thus, the Clarks' total recovery is $100,000.00. Then, the $100,000.00 would be reduced by the $25,000.00 already recovered from Farmers, the tortfeasor's insurance company, and by the $25,000.00 already paid by American Family under the Clarks' underinsured motorist coverage.

That part of the judgment granting American Family's motion for summary judgment, thereby holding that the Clarks were not entitled to stack underinsured motorist coverage under their insurance policies, is reversed. That part of the judgment granting the Clarks' motion for summary judgment, thereby holding that the amount recoverable from their insurance company under the underinsured motorist coverage was not to be offset by the amount recovered from the tortfeasor's insurance company, is reversed. The cause is remanded for the trial court to enter judgment not inconsistent with this opinion.