**Linda ARBUTHNOT, Guardian of the Estate of Steven Arbuthnot, A Disabled Person, Respondent,**

v.

**NORTHERN INSURANCE COMPANY OF NEW YORK, Appellant.**

No. ED 83458.

Missouri Court of Appeals, Eastern District, Division One.

June 1, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 21, 2004.

Application for Transfer Denied Aug. 24, 2004.

Bradley J. Baumgart, Susan C. Hascall, Shughart Thomson & Kilroy, P.C., Kansas City, MO, for appellant.

Steven C. Giacoletto, Giacoletto Law Office, P.C., Collinsville, IL, Jeffrey J. Lowe, P.C., St. Louis, MO, for respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Northern Insurance Company of New York ("NIC"), appeals from the judgment of the Circuit Court of the City of St. Louis granting summary judgment in favor of respondent, Linda Arbuthnot, guardian of the estate of Steven Arbuth-not, a disabled person ("Plaintiff"). We affirm.

The material facts in this case are undisputed. On June 14, 2000, Plaintiff was working for Missouri Machinery and Engineering Company ("Missouri Machinery") in the City of St. Louis. Plaintiff was on the driver's side of Missouri Machinery's service truck, which was parked along the curb or service lane of 18th Street approximately 150 feet south of Market Street, when he was struck by an unidentified hit and run vehicle. At the time of impact, Plaintiff had been retrieving tools or parts from the truck for use in repairing a fountain device in Union Station.

A short time later, Plaintiff was discovered lying in the street seriously injured and unconscious, and the side compartment door panel, which covered the compartment from which Plaintiff was to retrieve the tools or parts, was detached and was lying on the street nearby. Plaintiff's hair and other bodily remnants were found on the truck.

Plaintiff's first amended petition alleged four counts. The first count sought a declaratory judgment that NIC's insurance policy was in effect and applied to Plaintiff and, therefore, asked that a judgment for $1,000,000 be entered for Plaintiff. The second count was for damages for NIC's alleged breach of the insurance contract. Plaintiff's third count sought relief from NIC's vexatious refusal to pay. In the fourth count, Plaintiff sought judgment on the basis that the uninsured motorist endorsement of NIC's policy was against public policy and state law.

NIC counterclaimed seeking a declaration that the policy issued to Missouri Machinery provided no coverage for injuries to Plaintiff.

The trial court found that liability in this case centers on the interpretation of the

uninsured motorist provisions of NIC's policy, which was in force on Missouri Machinery's truck at the time of the accident. Based on the factual circumstances, the trial court found that when Plaintiff was struck, he was in direct contact with the open truck compartment with the detached panel. The trial court denied NIC's motion for reconsideration of its motion for summary judgment and granted Plaintiff's motion for partial summary judgment on the issue of liability and uninsured motorist coverage for Plaintiff.[1] The parties entered into a stipulation on July 14, 2003, in which they agreed that total damages to Plaintiff would be equal to the $1,000,000 policy limits of NIC's policy if that policy provided coverage, which NIC continued to deny. Plaintiff also dismissed the third count of his amended petition with prejudice pursuant to this stipulation. The trial court found based upon its entry of partial summary judgment and the parties' stipulation that the second and fourth counts of Plaintiff's amended petition were moot and dismissed those counts. Finally, the trial court found for Plaintiff and awarded her $1,000,000 plus applicable court costs on the first count of her amended petition, which also had the effect of extinguishing NIC's counterclaim.

When reviewing a grant of summary judgment, we view the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). Our review is essentially *de novo*. *Id.* We will uphold the trial court's judgment if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 381. The moving party has the burden to show it has a right to judgment as a matter of law and that

there is no genuine issue of material fact. *Id.* at 378. An entry of summary judgment may be sustained on any theory supported by the record. *In re Estate of Blodgett*, 95 S.W.3d 79, 81 (Mo.banc 2003).

In its first point on appeal, NIC argues the trial court erred in granting summary judgment in favor of Plaintiff under the uninsured motorist provision because Plaintiff was not "occupying" an insured vehicle at the time he was injured.

The language in an insurance policy must be given its plain meaning. *Clark v. American Family Mut. Ins. Co.*, 92 S.W.3d 198, 200 (Mo.App. E.D.2002). We find ambiguity where there is duplicity, indistinctness, or uncertainty in the meaning of words in the policy. *Id.* If there is no ambiguity, the policy must be enforced according to its terms. *Id.* We may not create an ambiguity where none exists or rewrite a policy to provide coverage for which the parties never contracted, unless a statute or public policy requires coverage. *Id.* at 200–01. The parties' disagreement over the interpretation of a term in the policy does not render the term ambiguous. *Id.* at 201.

In the present policy, the "Missouri Uninsured Motorists Coverage" endorsement provides coverage for, among other categories, "[a]nyone else 'occupying' a covered 'auto....'" Further, it provides that " '[o]ccupying' means in, upon, getting in, on, out or off."

We have previously found that a policy defining "occupying" as "in or upon or entering in or alighting from" is unambiguous. *Pope v. Stolts*, 712 S.W.2d 434, 436 (Mo.App. E.D.1986). In *Pope*, the claimant was leaning under the hood with his stomach against the grill of the car and his legs against the bumper while he prepared

---

**1.** NIC's motion for summary judgment had previously been denied on April 3, 2003.

to attach jumper cables. *Id.* at 435–36. We found that under those circumstances the claimant was "upon" the car. *Id.* at 438. However, the common definition is not limited to those circumstances. Random House Webster's College Dictionary defines "upon" as, among other things, "in or into complete or approximate contact with." Random House Webster's College Dictionary 1411 (2d ed.1997). The Supreme Court of South Carolina has held that the meaning of the word "upon" is not limited to a position on top of a car. *McAbee v. Nationwide Mut. Ins. Co.*, 249 S.C. 96, 152 S.E.2d 731, 732 (1967).

In this case, Plaintiff had been "upon" the truck retrieving the tool or parts to work on the fountain. This is evidenced by the fact that the door, which covered the compartment holding the tool or parts had been torn off and was found lying in the street next to Plaintiff. Further, as John Wickert, Plaintiff's co-worker, testified and the trial court found, Plaintiff's hair and other bodily remnants were found on the truck. We find that Plaintiff was "upon" the truck because he was at least in approximate contact with the truck as that term is commonly understood.

Furthermore, the definition of "occupying" has been construed in numerous cases. A review of those cases shows "a certain lack of consistency in results and each case must be decided on its facts." *State Farm Mut. Auto. Ins. v. Farmers Ins.*, 569 S.W.2d 384, 385 (Mo.App. E.D. 1978). The cases generally fall into one of two categories where the results are generally consistent with a few exceptions. *Id.*

The first category includes those cases where "the reason for leaving the vehicle and the claimant's activities after leaving the vehicle are directly related to the in-sured vehicle itself." *Id.* This category normally includes situations where a vehicle has malfunctioned or sustained damage and the claimant is trying to repair the damage, prevent further damage, or is giving or receiving information about the damage. *Id.* Because the injuries in this category of cases are resulting directly from the operation of the vehicle, courts have liberally construed the "occupancy" provision to allow coverage. *Id.*

The second category includes those cases where the "vehicle is the means of transportation to the point where the claimant leaves the vehicle, and the reason for leaving the vehicle is unrelated to the vehicle itself." *State Farm*, 569 S.W.2d at 385. Courts have been much more rigid in requiring a claimant to prove he fits within one of the definitions of occupancy in these cases. *Id.*

The current case does not clearly fit into either the first or second category. Evidence that this case fits into the second category includes the fact that the vehicle was the means by which Plaintiff traveled to the accident site, but he left the vehicle to work on the fountain. However, pointing to the first category is the fact that Plaintiff returned to the truck for reasons related to the truck and was injured as he was utilizing the truck for one of its intended purposes, *i.e.*, carrying tools and parts. We find no cases in our jurisdiction that deal with these precise facts.

In a case with facts similar to those at issue in this case, the Supreme Court of Iowa found that a claimant was an insured because he was "occupying" his service truck.[2] *Simpson v. United States Fidelity & Guaranty Co.*, 562 N.W.2d 627, 631 (Iowa 1997). The policy in that case defined "occupying" as "in, upon, getting in, on, out or off." *Id.* at 629. The claimant

---

**2.** However, the court denied coverage on other grounds.

was inspecting a water main valve and had parked his truck on the curb lane of the street. *Id.* at 630. In order to inspect the valve, claimant used a variety of tools that were available from his truck. *Id.* The record showed that claimant was returning to his truck for a tool when he was struck by an uninsured motorist somewhere between five and twenty feet from the truck. *Id.*

The Iowa Supreme Court concluded

... as a matter of law that, whether [claimant] was twenty feet or five feet from the truck, he was an insured of USF & G at the time he was struck by the uninsured motorist. It is clear he was in close proximity to the truck when he was injured. He had left the location of the valve and was returning to the vehicle to pick up another tool. He was clearly engaged in an activity relating to the use of the specialized truck. The vehicle was not merely a means of transporting persons, but was designed and equipped to aid with water valve inspection, cleanup, and repair. *Id.* at 631.

In this case, the insurance policy's definition of "occupying" is exactly the same as in *Simpson.* Further, the truck Plaintiff was using was specialized to carry parts and tools and had compartments that were accessible from outside the truck. Plaintiff was repairing a fountain device and had returned to the truck to retrieve a tool or part. As evidenced by Plaintiff's bodily remnants and hair, which were found on the truck, Plaintiff was in close proximity to the truck when the accident occurred.

We find that Plaintiff comes within the definition of occupancy because he was upon the truck as that term is commonly understood, and Plaintiff's purpose was related to the truck. Therefore, we find that based on the facts of this case, Plaintiff was "occupying" the truck within the meaning of the insurance policy. Point denied.

In its second point on appeal, NIC argues the trial court erred in granting summary judgment in favor of Plaintiff because the facts on which the court depended were not undisputed.

NIC contends the trial court relied on a disputed fact when it stated in its Order and Partial Judgment that "[Plaintiff] was almost certainly in contact with the insured truck, had operated a custom panel in its driver's side to an open position and was engaged in removal of objects from the vehicle when struck by a hit and run vehicle." The central fact that NIC disputes is whether Plaintiff was touching the truck.

Our determination on the first point demonstrates that Plaintiff need not be touching the insured vehicle when the accident occurs. Therefore, even if the trial court mistakenly relied on the disputed fact of whether Plaintiff was touching the truck, the trial court's judgment can be sustained. To determine whether Plaintiff was "occupying" the truck, evidence of physical contact is not required. Point denied.

Judgment affirmed.

ROBERT G. DOWD, JR., J. and MARY R. RUSSELL, J. concur.