Courtney **TAYLOR**, Respondent,

v.

**STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPA-NY, Appellant.**

**No. WD 74003.**

Missouri Court of Appeals, Western District.

Feb. 21, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2012.

Application for Transfer Denied July 3, 2012.

Dale L. Beckerman, Kansas City, MO, for appellant.

John R. Cady, Platte City, MO, for respondent.

Before Special Division: GARY D. WITT, Presiding Judge, ZEL M. FISCHER, Special Judge and KENNETH M. ROMINES, Special Judge.

GARY D. WITT, Presiding Judge.

State Farm Mutual Automobile Insurance Company ("State Farm") appeals from the trial court's judgment granting Courtney Taylor's ("Taylor") motion for summary judgment, and denying State Farm's motion for summary judgment. We reverse.

## Factual Background

The parties stipulated to the facts below and do not dispute the relevant facts on appeal. Pursuant to the stipulated facts the parties filed cross motions for summary judgment.

On October 31, 2007, Taylor, who was fifteen years old at the time, sustained serious injuries when she was struck, while walking, by a vehicle operated by Donna Scott ("Scott"). The parties stipulated that Taylor's damages equaled or exceeded $135,000. Scott's automobile insurance policy, issued by Chicago First Insurance, provided liability coverage limits of $25,000, and this amount was subsequently paid to Taylor.

At the time of the accident, Taylor was insured under two automobile policies purchased by her parents from State Farm. Both policies provided underinsured motorist coverage ("UIM") in the amount of $50,000. State Farm paid Taylor $50,000 for UIM coverage under one of the policies, but refused to pay UIM coverage under the second policy based on its contention that the policies precluded "stacking" of benefits pursuant to clear and unambiguous language in the policies.

On October 12, 2010, Taylor filed suit against State Farm in the Circuit Court of Clay County to recover an additional $50,000 based on the UIM coverage provided in the second policy. The parties filed cross motions for summary judgment.

On May 10, 2011, the trial court entered its Judgment granting Taylor's summary judgment motion, and denying State Farm's summary judgment motion. Accordingly, the trial court entered judgment in favor of Taylor in the amount of $50,000. State Farm now appeals.

Further facts are outlined below as relevant in the analysis section.

## Standard of Review

This is an appeal from summary judgment, and as such our review is *de novo.* *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The Court "will review the record in the light most favorable to the party against whom judgment was entered." *Id.* Granting summary judgment is proper only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 380. "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *State ex rel. Outcom, Inc. v. City of Peculiar,* 350 S.W.3d 57, 62 (Mo.App. W.D.2011) (internal citation and quotation marks omitted).

## Analysis

In its sole Point on appeal, State Farm argues that the trial court erred in entering judgment in favor of Taylor because the Court "permit[ed] Plaintiff to stack underinsured coverage as a pedestrian because the $50,000 of underinsured benefits paid by State Farm fulfilled the obligation of State Farm in that each State

Farm policy had underinsured policy limit of $50,000 and [because] each State Farm policy unambiguously stated that the maximum underinsured coverage available was the policy limit of the policy with the highest limit which State Farm paid by its payment of $50,000."

The interpretation of an insurance policy is a question of law that this Court also determines *de novo. Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. banc 2009). Because this Court's review is *de novo,* if the trial court's judgment can be sustained on any ground as a matter of law, even if different than the one posited in the order granting summary judgment, it should be affirmed. *ITT Commercial Fin.*, 854 S.W.2d at 387–88. In construing the terms of an insurance policy, this Court applies the meaning that would be attached by an ordinary person of average understanding if purchasing insurance and resolves ambiguities in favor of the insured. *Jones,* 287 S.W.3d at 690 (citing *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) and *Martin v. United States Fid. & Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999)).

*Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 46 (Mo. banc 2009) (internal quotation marks omitted.) "However, where insurance policies are unambiguous, they will be enforced as written." *Todd v. Missouri United School Ins. Council,* 223 S.W.3d 156, 160 (Mo. banc 2007) (internal citation and quotation marks omitted). "Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Property & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009) (citation omitted).

Taylor received the maximum limits of liability coverage ($25,000) from Scott's Chicago First Insurance based on Scott's undisputed liability in causing the accident and injuring Taylor. Taylor has also recovered the maximum limits of UIM coverage of $50,000 pursuant to the *first* of the two State Farm policies which covered Taylor. The question before us is whether the trial court erred in concluding that Taylor is entitled to recover an additional $50,000 of UIM coverage from State Farm under the *second* Policy.[1]

The difference between Uninsured Motorist ("UM") coverage and UIM coverage in set forth in *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri:*

> Though similar, **un**insured motorist coverage and **under**insured motorist (UIM) coverage are not the same thing. The former refers to coverage intended to provide a source of recovery for insureds who are legally entitled to recover damages for bodily injury caused by the negligent owner or operator of a completely uninsured motor vehicle. UIM coverage, on the other hand, refers to coverage intended to provide a source of recovery for insureds (up to the insurer's liability limit for such coverage) who have been bodily injured by a negligent motorist whose own automobile liability insurance coverage is insufficient to fully pay for the injured person's actual damages ... Both uninsured motorist coverage and UIM coverage are in the nature of floating, *personal* accident insurance rather than insurance on a particular *vehicle,* and thus follow the insured individual wherever he goes.

---

1. The two policies are substantively identical. In the Stipulation, the parties agreed that State Farm had made payment of $50,000 to Taylor based on policy number 468418A2925 (Exhibit A). Therefore, because the question

then becomes whether State Farm is liable under the second policy, policy number 5216186D1725C (Exhibit B), we will hereinafter refer to it simply as "the Policy" or "Policy."

992 S.W.2d 308, 313 (Mo.App. E.D.1999) (citations omitted and emphasis original).

The Policy provided for UIM coverage as follows:

### UNDERINSURED MOTOR VEHICLE– COVERAGE W

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured vehicle.* The *bodily injury* must be sustained by an *insured* and caused by an accident arising out of the operation, maintenance or use of an *underinsured motor vehicle.*

(Emphasis original.)

It is undisputed that this Policy had a "stated limit[ ] of underinsured motor vehicle coverage in the amount of $50,000." Furthermore, this Policy contained the following relevant "Limits of Liability" language for "Coverage W":

5. The most we pay will be the lesser of:

a. the difference between the amount of the *insured's* damages for *bodily injury,* and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury;* or

b. the limits of liability of this coverage.

(Emphasis original.)

Therefore, because the parties stipulated before the trial court that Taylor "sustained at least $135,000 in total damages," there is no dispute that, if the above clauses were the only relevant language in the Policy, Taylor would be entitled to recover an additional $50,000 pursuant to the second Policy. The disputed issue is whether the additional language below, which was also contained in the Policy, precluded Taylor from recovering under the second Policy as a matter of law:

### If There Is Other Underinsured Motor Vehicle Coverage

1. If the *insured* sustains *bodily injury* as a pedestrian and other underinsured motor vehicle coverage applies:

a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and

b. we are liable only for our share. Our share is that percent of the damages that the limit of liability of this coverage bears to the total of all underinsured motor vehicle coverage applicable to the accident.

(Emphasis original.)

State Farm contends that the above language precluded Taylor from recovering under the second Policy because 1(a) of the Other Underinsured Motor Vehicle Coverage language "tells the reader that where multiple underinsured coverages apply, the total limit of all such coverages 'shall not exceed' the limit of the policy with the highest limit." Accordingly, the dispositive issue is whether the language of 1(a) makes it unambiguous that "stacking" of UIM policies is disallowed under the Policy.

The Missouri Supreme Court has outlined the following applicable principles in *Ritchie v. Allied Property & Cas. Ins. Co.,* 307 S.W.3d 132, 135 (Mo. banc 2009):

" 'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri,* 992 S.W.2d 308,

313 (Mo.App.1999). Missouri law requires that all automobile insurance policies issued in this state provide *uninsured* motorist coverage of at least the statutory minimum amount of $25,000. Section 379.203, RSMo 2000. Flowing from this statutory requirement, this Court has recognized that where multiple policies or multiple uninsured motorist coverages are in place, insurers are prohibited from including policy language precluding stacking of the coverage provided under multiple policies or coverage provisions. *Niswonger*, 992 S.W.2d at 313.

By contrast, and unlike many other states, Missouri statutes do not also mandate *underinsured motorist* coverage. *See 16 WILLISTON ON CONTRACTS, § 49.35 (4th ed.2009)* (contrasting the requirements of various states in regard to underinsured motorist coverage). Consequently, "the existence of the [underinsured motorist] coverage and its ability to be stacked are determined by the contract entered between the insured and the insurer." *Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 383 (Mo. banc 1991). This means that if the policy language is unambiguous in disallowing stacking, the anti-stacking provisions are enforceable. *Seeck*, 212 S.W.3d at 132. "If, however, policy language is ambiguous [as to stacking], it must be construed against the insurer," and stacking will be allowed. *Id.*; *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo. 1997).

■ Taylor sets forth numerous arguments as to why the relevant language of 1(a) is ambiguous and subject to different interpretations. Ultimately, under the facts of this case, we do not find the following language ambiguous: "If the insured sustains bodily injury as a pedestrian and other underinsured motor vehicle coverage applies: the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability." A person reading the Policy would know that Section 1(a) applies if more than one policy covered a UIM claim because this section is entitled "**If There Is Other Underinsured Motor Vehicle Coverage.**"

The substance of Section 1(a) is also unambiguous. Taylor argues that the language is ambiguous because of the use of the word *coverage* instead of *policy*. We disagree.

Because both of the State Farm policies undisputedly covered this UIM claim, Section 1(a) acts to limit the liability of "all such coverages" to the "highest limit of liability" in either policy; in this case, $50,000. On appeal, Taylor simply fails to articulate a plausible alternative reading of this provision, which would cause a reasonable lay person to believe that the limits of both policies would apply to the facts of this case.

Instead, Taylor argues that language in the Policy that pertains to *liability* coverage, as opposed to UIM coverage, sets forth proper language to constitute an "anti-stacking" clause, while the language of Section 1(a) is not a proper "anti-stacking" clause. Taylor's argument concerns the following language found in the Liability Coverage section of the Policies:

If There Is Other Liability Coverage

1. Policies Issued by Us to You, Your Spouse, or Any Relative

If two or more vehicle liability policies issued by us to *you, your spouse,* or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability. (Emphasis original.)

■ Specifically, Taylor argues that because State Farm did not use the same

"anti-stacking" language in the Liability Coverage section of the Policy and the UIM coverage section of the Policy that Section 1(a) is thereby rendered "ambiguous." "It is settled law that when analyzing an insurance contract, the entire policy and not just isolated provisions or clauses must be considered." *Rice*, 301 S.W.3d at 47 (internal quotation marks and citations omitted).

■ While we agree that the anti-stacking clause in the liability section of the Policy is stronger language than Section 1(a), Taylor cites no authority to support her argument that this fact alone somehow renders Section 1(a) ambiguous. "A court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate." *Rodriguez v. General Acc. Ins. Co. of America*, 808 S.W.2d 379, 382 (Mo. banc 1991). "Thus, where insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage." *Id.* Here, Section 1(a) was broadly worded to include situations where duplicative coverage existed, precluding stacking of any of the policies issued by State Farm with each other or with the policies of another insurance company. Ultimately, Taylor fails to offer any support for her suggestion that Section 1(a) "is not an anti-stacking clause."

This Court recently highlighted how a typical "anti-stacking provision" reads:

In *Chamness*, like the present case, there was a general anti-stacking provision in the insurance policies, which stated (in almost identical form as the present case): "The total limit of our liability under all policies issued to [the insured] by [the insurer] shall not exceed the highest limit of liability under any one policy." *Id.* at 201–02.

*Long v. Shelter Ins. Companies*, 351 S.W.3d 692, 699 (Mo.App. W.D.2011) (quoting *Chamness v. American Family Mutual Insurance Co.*, 226 S.W.3d 199 (Mo.App. E.D.2007)). Section 1(a) reads nearly identically to the above "anti-stacking" language in *Long* and *Chamness*; the only difference is that Section 1(a) does not limit stacking in the context of only State Farm policies, but rather also precludes stacking "coverage" issued by another insurance company.[2] Taylor has cited no authority that holds that this is a distinction with a difference, and when giving Section 1(a) its plain and ordinary meaning it is clearly anti-stacking language.

To support its argument that Section 1(a) is ambiguous, Taylor relies heavily on *Clark v. American Family Mut. Ins. Co.*, 92 S.W.3d 198, 203 (Mo.App. E.D.2002). On the surface *Clark* is factually similar to the instant case because it also dealt with a scenario where the insurance company "issue[d] two separate policies for under-insured motorist coverage," and, therefore, "[i]f each endorsement is considered, however, the 'total limit of all similar insurance' is $100,000.00 and American Family's proportionate share is $50,000.00 under

---

**2.** We rely on *Long* and *Chamness* to illustrate that the language in question is in fact anti-stacking language. The issue in those cases of whether the anti-stacking language is clear and unambiguous as read within the Policy as a whole is a different issue than is presented in the case at bar. As explained above, in the instant case, the anti-stacking language is clear and ambiguous as read in the context of the entire Policy. This of course distinguishes

today's case from *Long* and *Chamness* because in those prior cases there was *other* language in the policies that conflicted with the anti-stacking language, rendering the policies in those cases ambiguous. *See Long*, 351 S.W.3d at 698–99; *Chamness*, 226 S.W.3d at 207–8. No such inconsistent or conflicting language exists in the instant case, and thus no similar ambiguity exists in the Policy in question today.

one policy and $50,000.00 under the other." *Id.* But in *Clark*, the Eastern District concluded that an ambiguity existed because that policy contained an anti-stacking clause *and* a separate "other insurance" clause, with the "other insurance" clause stating, in relevant part, "[i]f there is other similar insurance on a loss covered by this endorsement, we will pay our share according to this policy's proportion of the total limits of all similar insurance." *Id.* at 201. Based on this "other insurance" clause, the Eastern District concluded that "[t]here are two possible ways to read the policy as to how to calculate coverage in this situation: (1) the insured may recover the proportionate share regardless of the stated maximum; or (2) the insured may only recover the stated maximum regardless of the proportionate share." *Id.* at 203.

But here Taylor has not demonstrated how the anti-stacking provision of the Policy conflicts with *any other portion or clause of the Policy*. Taylor clings to the fact that the above "other insurance" policy language in *Clark* is similar to the language found in the instant Policy in 1(*b* ), which states that "we are liable only for our share. Our share is that percent of the damages that the *limit of liability* of this coverage bears to the total of all underinsured motor vehicle coverage applicable to the accident." (Emphasis added.) The flaw with Taylor's analysis is that it ignores the critical language of 1(*a* ), which immediately precedes 1(*b* ) and states that "the total *limits of liability* under all such coverages shall not exceed that of the coverage with the highest *limit of liability*." (Emphasis added.) We fail to find any ambiguity between Section 1(a) and Section 1(b), as applied to the facts of this case, because they are not at odds when read together, as written.[3] Indeed, both 1(a) and 1(b) reference the fact that there is a "limit of liability" that pertains to when "there is other underinsured motor vehicle coverage." Simply put, had *Clark*'s "other insurance" clause contained the language of Section 1(a), there would have been no inconsistency in that policy because the "other insurance" clause would have mirrored the anti-stacking clause in that policy. *Id.*

 Furthermore, Taylor argues that "[t]here is no anti-stacking clause in the 'Limits of Liability' Section of the UIM coverage," but fails to cite any authority that the anti-stacking language must be contained in the Limits of Liability Section. Here, State Farm had a distinct section clearly entitled **"If There Is Other Underinsured Motor Vehicle Coverage,"** which was on the page immediately following the Limits of Liability Section. "If ambiguity exists, the policy will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy." *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo.2009) (internal citations and quotation marks omitted). While Section 1(b) is not a model of clarity, we fail to see how an average insurance consumer would read this language to provide for coverage up to the policy limits from both policies for the damages in this case.

Because we conclude that the relevant language of 1(a) is unambiguous in disallowing stacking, this Court must reverse the judgment of the trial court that awarded Taylor $50,000 pursuant to the second Policy.

 Furthermore, because State Farm filed an opposing motion for summary judgment before the trial court on the

---

**3.** It should be noted that Section 1(a) and Section 1(b) are conjoined by an "and," and thus are clearly meant to be read together.

identical issue (that it need not pay an additional $50,000 to Taylor because the anti-stacking language is unambiguous), we conclude that this Court must grant State Farm's motion for summary judgment. Rule 84.14 provides that "the appellate court shall award a new trial or partial new trial, reverse, or affirm the judgment or order of the trial court, in whole or in part, or *give such judgment as the court ought to give.* Unless justice otherwise requires, the court shall dispose finally of the case." Rule 84.14 (emphasis added).[4] "An appellate court may give judgment as the circuit court ought to have given, but only in circumstances that indicate there is no further need for proceedings in the circuit court." *DeBaliviere Place Ass'n v. Veal*, 337 S.W.3d 670, 679 (Mo. banc 2011).

The facts in this case are stipulated to by the parties. On appeal, no party disputes that the resolution of this issue is dispositive of the instant litigation. Because we conclude that State Farm has demonstrated that there are no genuine issues of material fact and it is entitled to judgment as a matter of law, we grant State Farm's motion for summary judgment. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376.

### Conclusion

The judgment of the circuit court, granting Taylor's motion for summary judgment, is hereby reversed. Finally, pursuant to Rule 84.14, we enter an order granting State Farm's motion for summary judgment.

All concur.

