### AMERICAN FAMILY MUTUAL INSURANCE CO., Appellant,

v.

### John RAGSDALE and Donna Ragsdale, Respondents.

### No. WD 65700.

Missouri Court of Appeals, Western District.

July 11, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 2006.

Application for Transfer Denied Feb. 27, 2007.

Terry M. Evans, Smithville, MO, for appellant.

Rex V. Gump, Moberly, MO, for respondents.

Before ELLIS, P.J., LOWENSTEIN and SPINDEN, JJ.

HAROLD L. LOWENSTEIN, Judge.

American Family Mutual Insurance Company ("American Family") appeals from a judgment entered in favor of John and Donna Ragsdale ("the Ragsdales"), which held that the Ragsdales were entitled to underinsured motorist coverage under their two policies with American Family. Respondent John Ragsdale ("Ragsdale") was injured while driving a vehicle owned by his employer. Because

of ambiguities in the policies, the trial court construed the policies in the Ragsdales' favor: (1) allowing the stacking of their two policies of $100,000 which contained underinsured coverage, so as to provide total coverage in the amount of $200,000, and (2) holding that American Family was not entitled to set off monies received by the Ragsdales from the tortfeasor's liability policy or monies received from Ragsdale's Workers' Compensation against the underinsured motorist coverage. American Family also asserts that the tortfeasor's vehicle does not meet the definition of underinsured motor vehicle and, therefore, the trial court erred when it ordered it to pay the Ragsdales under the underinsured motor vehicle provisions. This court affirms.

## FACTS

American Family filed this action for a declaratory judgment. The parties stipulated to the facts. In 2002, Ragsdale and Joe Davis were involved in a motor vehicle accident, resulting in Ragsdale receiving serious injuries and subsequent medical complications. Ragsdale was driving a 1993 Ford Aerostar at the time of the accident, owned by his employer, GMF, Incorporated. The insurance policy covering the employer's Aerostar did not include underinsured motorist coverage. Davis' vehicle was insured by Farmer's Insurance Group with liability policy limits of $100,000 per person. Farmer's Insurance tendered this amount to the Ragsdales. In addition, workers' compensation benefits were paid to Ragsdale in the amount of $230,398.61 for medical benefits and expenses and $12,534.74 for indemnity benefits. At the time of the accident the appellant, American Family, insured the Ragsdales' personal vehicles under two policies, each having underinsured motorist coverage in the amount of $100,000. The Ragsdales made a $200,000 demand upon American Family. American Family filed this action for a declaratory judgment.

The portions of the Ragsdales' insurance policies with American Family relevant to this appeal are captured in the Underinsured Motorists Coverage Endorsement, particularly the definition of an underinsured motor vehicle, the "Limits of Liability" clause, and the "Other Insurance" clause. Both of the Ragsdales' policies define an "underinsured motor vehicle" as a "motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of liability of this Underinsured Motorists coverage." The underinsured endorsement of each policy was in the amount of $100,000. The remaining relevant clauses state in part:

LIMITS OF LIABILITY

The limits of liability of this coverage as shown in the declarations apply, subject to the following:

1. The limit for each person is the maximum for all damages sustained by all persons as the result of bodily injury to one person in any one accident.

2. Subject to the limit for each person, the limit for each accident is the maximum for bodily injury sustained by two or more persons in any one accident.

We will pay no more than these maximums no matter how many vehicles are described in the declarations, insured persons, claims, claimants or policies or vehicles are involved in the accident.

The limits of liability of this coverage shall be reduced by:

1. A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto

liability insurance, for loss caused by an accident with an underinsured motor vehicle.

2. A payment under the Liability coverage of this policy.

3. A payment made or amount payable because of bodily injury under any workers' compensation or disability benefits law or any similar law.

OTHER INSURANCE

If there is other similar insurance on a loss covered by this endorsement, we will pay our share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance.

Finding the last sentence of the Other Insurance clause to be ambiguous, the trial court construed the policies against American Family, holding that the Ragsdales were entitled to the benefit of the underinsured motorist coverage under their two policies of insurance, and that those policies can be stacked to provide a total coverage of $200,000. Finally, the trial court held that American Family was not entitled to set off monies received by Davis' liability policy or monies received from workers' compensation against the UIM coverage. This appeal follows.

STANDARD OF REVIEW

■ When reviewing a declaratory judgment, the standard of review is the same as any other court-tried case. *Lakin v. Gen. Am. Mut. Holding Co.*, 55 S.W.3d 499, 502 (Mo.App.2001). The trial court's decision will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or it erroneously applies the law. *Id.* at 503. However, the interpretation of the mean-

ing of an insurance policy is a question of law. *Goza v. Hartford Underwriters Ins. Co.*, 972 S.W.2d 371, 373 (Mo.App.1998). If the provisions of a policy of insurance are deemed ambiguous, they are construed against the insurer. *Behr v. Blue Cross Hosp. Serv., Inc.*, 715 S.W.2d 251, 256 (Mo. banc 1986).

ANALYSIS

■ American Family first contends that this court must decide whether the tortfeasor's vehicle, insured for $100,000, is an underinsured motor vehicle as defined in the Ragsdales' underinsured motorist coverage endorsement. American Family then contends that only if this court determines that the Davis vehicle is underinsured does this court reach the issue of whether the policies can be stacked and the effect of the set-off provisions. However, by doing so, this court would be reviewing the policy's definition of underinsured motor vehicle in a vacuum. *See Goza*, 972 S.W.2d at 374–75. Determining whether the definition of an underinsured motor vehicle is met is not a threshold issue to determine whether the insured is entitled to underinsured motorist coverage. *Id.* at 375. "Where the definition of underinsured was identical to the one in the [insurer's] policy and was found to be unambiguous ... the insured can still be entitled to [underinsured motor vehicle] benefits even though that definition is not met if the policy's [underinsured motor vehicle] provisions when read together give rise to such an ambiguity." *Id.* Therefore, this court declines to perform an isolated examination of the definition of Underinsured Motor Vehicle, and instead views all relevant provisions of the underinsured motorist endorsement to determine whether the trial court correctly concluded that the Ragsdales were entitled to coverage.

In support of its position that the Davis vehicle does not meet the definition of an underinsured motor vehicle, American Family primarily relies on *Rodriguez v. General Accident Insurance. Co. of America,* which held that the tortfeasor's vehicle insured for $50,000 was not an underinsured motor vehicle within the meaning of the policy, when the Rodriguez' policy provided underinsured coverage for the equal amount of $50,000. 808 S.W.2d 379, 382 (Mo. banc 1991). In reaching that decision, the Court in *Rodriguez* found the Underinsured Motor Vehicle definition[1] and the Limit of Liability,[2] both similar to those respective clauses in this case, to be unambiguous. Therefore, in accordance with this ruling, this court holds that Underinsured Motor Vehicle and the Limit of Liability language in the Ragsdales' policies are unambiguous. Significantly, however, *Rodriguez* did not involve an Other Insurance clause, as this case does, and, therefore, the portion of *Rodriguez* that enforced the policy against the insured without considering an Other Insurance clause is distinguished.

Instead, this court finds the facts of *Niswonger v. Farm Bureau Town & Country Insurance Company of Missouri,* 992 S.W.2d 308 (Mo.App.1999), on point. In that case, the second sentence of the Other Insurance clause stated, "However, any insurance provided under this endorsement for a person insured while occupying a non-owned vehicle is *excess of any other similar insurance.*" *Id.* at 315. (Emphasis added). The Eastern District held this clause to be ambiguous, resulting in the required stacking of the plaintiffs' three separate vehicle policies. *Id.* at 319. The Other Insurance clause in the case at bar is nearly identical to the clause in *Niswonger,* and, therefore, this court follows the holding of *Niswonger.*

■ A court is not allowed to create an ambiguity to distort the language of an unambiguous insurance policy. *Goza,* 972 S.W.2d at 374. However, where provisions are ambiguous, they are construed against the insurer. *Id.* Ambiguities arise when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the insurance contract. *Id.* Language is ambiguous if it is reasonably open to different constructions. *Id.* Ambiguous language is viewed in the meaning that would ordinarily be understood by the layperson that bought and paid for the policy. *Id.*

■ Here, the Davis policy provided $100,000 coverage. The Ragsdales' policies provided $100,000 in coverage. Obviously, these amounts are identical, and an isolated reading of the definition of "un-

1. The policy in *Rodriguez* defined "underinsured motor vehicle" as "a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage." 808 S.W.2d at 381.

2. The Limit of Liability in *Rodriguez* stated:
A. The limit of liability shown in the schedule for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident
However, the limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under part A of this policy.
Part A stated in relevant part, "We will pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury;'"
1. Sustained by an 'insured'.

derinsured motor vehicle" forbids coverage. But, that does not end the inquiry. As already stated, the Other Insurance clause of the Ragsdales' underinsured motor vehicle endorsement states:

> If there is other similar insurance on a loss covered by this endorsement, we will pay our share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance. (Emphasis added).

Ragsdale was driving a vehicle owned by his employer. The second sentence of the Other Insurance clause would, therefore, apply to Ragsdale. The questionable term in the second sentence is *other similar insurance.* One construction would indicate that the underinsured motorist coverage provided by the endorsement is excess over *any other applicable* coverage. Another construction, one in which American Family would have this court adopt, would indicate that the underinsured motorist coverage provided by the endorsement is excess over other *underinsured motorist coverage,* and, therefore, because no such coverage exists in this case, the excess clause does not apply. In other words, American Family construes the *other similar insurance* to mean *other underinsured motorists insurance.* And, if the excess clause does not apply, as American Family contends it does not, then the unambiguous anti-stacking clause and the set-off clause take effect.

Webster's II New College Dictionary (1995) defines "similar" as "resembling though not completely identical." Using this definition, identical insurance would mean underinsured motorist coverage. If American Family intended *similar* to mean *other underinsured motorist insurance,* it simply could have stated *other*

*similar underinsured motorist insurance.* It did not do so; this court declines to apply such a construction, and concludes the second sentence of the Other Insurance clause to be ambiguous.

Other cases have ruled that such a sentence as ambiguous. *See Niswonger,* 992 S.W.2d at 319; *Clark v. Am. Family Mut. Ins. Co.,* 92 S.W.3d, 198, 202–03 (Mo.App. E.D.2002) (affirming *Niswonger's* conclusion that the Other Insurance clause was ambiguous, but determining that the clause was inapplicable because Clark was not "occupying" a non-owned vehicle). American Family inadequately attempts to distinguish *Niswonger* and *Clark* on the basis that those cases involved an underinsured motorist under the respective policies' definition of underinsured motorist. This court has already concluded that, under *Goza,* it will not perform an isolated examination of the definitions without regard for the other provisions of the underinsured endorsement.

American Family likens this case to the cases of *Travelers Indemnity. Co. of America v. David C. Gibson, Inc.,* 11 F.Supp.2d 1096 (E.D.Mo.1998); *Green v. Federated Mutual Insurance Co.,* 13 S.W.3d 647 (Mo.App.1999); and *Lang v. Nationwide Mutual Fire Insurance Co.,* 970 S.W.2d 828 (Mo.App.1998). *Travelers* and *Green* are distinguishable, however, based on the unambiguous language of their respective Other Insurance clause. *See Travelers,* 11 F.Supp.2d at 1098–99 (finding "excess over any other *collectible underinsured motorists insurance* " to be unambiguous); *Green,* 13 S.W.3d at 648 (finding "excess over any other *collectible underinsured motorist insurance* " to be unambiguous). *Lang* did not involve an excess coverage clause, as the case at bar does, and, therefore, is not applicable. 970 S.W.2d at 831.

When policy language of an UIM endorsement is found to be ambiguous, the contract is construed against the insurer. *Niswonger,* 992 S.W.2d at 314. Having determined the excess clause of the Other Insurance provision ambiguous, the court must allow stacking of policies in consideration of the ambiguity the Other Insurance clause creates with respect to the anti-stacking provision. *Id.* Likewise, the same ambiguity prohibits American Family from setting-off monies received by the Ragsdales from Davis' liability policy or workers' compensation benefits against the underinsured motorist coverage in light of the ambiguity the Other Insurance clause creates with respect to the set-off provisions of the policies. *Zemelman v. Equity Mutual Insurance, Co.,* 935 S.W.2d 673, 678 (Mo.App.1996). The judgment is affirmed.

All concur.