Catherine A. CHAMNESS, Appellant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Respondent.

No. ED 88417.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 5, 2007.

Brett J. Hellmann, Rost & Hellmann, LLP, Jefferson City, MO, for appellant.

William P. Lampros, Attorney at Law, St. Louis, MO, for respondents.

GARY M. GAERTNER, SR., Judge.

Appellant, Catherine A. Chamness ("Plaintiff"), appeals from the judgment of the Circuit Court of the City of St. Louis granting summary judgment in favor of Respondent, American Family Mutual Insurance Company ("American Family"). Plaintiff had filed an action seeking underinsured motorist coverage under two insurance policies issued to her and her husband, William Chamness ("Plaintiff's husband"), by American Family for two vehicles. We reverse and remand.

On October 6, 2003, Plaintiff, operating a 1977 Ford F150 ("the Ford") owned by Plaintiff's husband, was involved in an automobile collision with a vehicle driven by

Missy Smith ("Smith"). Plaintiff sustained injuries as a result of the collision. Smith was insured by American Standard Insurance Company of Wisconsin ("Smith's insurance company") and had bodily injury liability insurance coverage in the amount of $100,000.00 per person and $300,000.00 per occurrence. Smith's insurance company settled with Plaintiff for the policy limit of $100,000.00.

At the time of Plaintiff and Smith's collision, Plaintiff and Plaintiff's husband were not living together in the same household. Plaintiff and Plaintiff's husband were both insured under two automobile insurance policies issued by American Family. Each policy covered a different vehicle: one policy covered the Ford and the other policy covered a 1988 Nissan Pathfinder. Both policies provide for underinsured motorist insurance coverage for bodily injury in the amount of $100,000.00 per person and $300,000.00 per accident.

The underinsured motorist coverage endorsement in both policies states in relevant part:

> We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the underinsured motor vehicle.
>
> . . .
>
> ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT ONLY
>
> . . .
>
> 3. Underinsured motor vehicle means a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of liability of this Underinsured Motorists coverage.

. . .

LIMITS OF LIABILITY

> The limits of liability of this coverage as shown in the declarations apply, subject to the following:
>
> 1. The limit for each person is the maximum for all damages sustained by all persons as the result of bodily injury to one person in any one accident.
>
> 2. Subject to the limit for each person, the limit for each accident is the maximum for bodily injury sustained by two or more persons in any one accident.
>
> We will pay no more than these maximums no matter how many vehicles are described in the declarations, insured persons, claims, claimants or policies or vehicles are involved in the accident.
>
> The limits of liability of this coverage [will] be reduced by:
>
> 1. A payment made or amount payable by or on behalf of any person or organization which may be . . . liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle.

. . .

OTHER INSURANCE

> If there is other similar insurance on a loss covered by this endorsement we will pay our share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance.

Under the general provisions portion of both policies, the "Two or More Cars Insured" provision states in pertinent part: "The total limit of our liability under all policies issued to you by us shall not ex-

ceed the highest limit of liability under any one policy."

The term "you" is defined throughout both policies as: "the policyholder named in the declarations and spouse, if living in the same household." The declarations page to both policies provides that the "policyholder/named insured" is: "Chamness, Catherine A and William."

Plaintiff sought underinsured motorist coverage from American Family under the two insurance policies. After American Family refused coverage, Plaintiff filed the present action for underinsured motorist coverage. Thereafter, American Family filed a motion for summary judgment, asserting that Plaintiff is not entitled to recovery under the underinsured motorist coverage endorsement of either policy because her collision with Smith did not occur with an underinsured motor vehicle, as Smiths' bodily injury liability coverage equaled the underinsured motorist coverage of each of Plaintiff's insurance policies. Plaintiff filed a cross-motion for summary judgment and response to Defendant's motion for summary judgment. In both of these motions, Plaintiff maintains that because of an ambiguity in the policies: (1) she is entitled to underinsured motorist coverage under both policies; (2) she is allowed to stack the $100,000.00 of underinsured motorist coverage provided by each policy; and (3) American Family is not entitled to set-off the amount recovered from Smith's insurance company.

Subsequently, the trial court granted American Family's motion for summary judgment and denied Plaintiff's cross-motion for summary judgment. In its decision, the trial court found that Plaintiff is not entitled to underinsured motorist coverage under either insurance policy because (1) the definition of an underinsured motor vehicle is not met under either poli-

cy, and (2) there is no ambiguity in either policy. This appeal by Plaintiff followed.

Our review of a grant of summary judgment is essentially *de novo*. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). We view the record in the light most favorable to the party against whom the trial court rendered judgment. *Id.* A trial court's judgment will be upheld if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Id.* at 377.

■ The interpretation of an insurance policy is a question of law that we review *de novo*. *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo.banc 2007). When we construe the language of an insurance policy, we apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Id.* (quotation omitted).

■ An insurance policy is ambiguous where there is duplicity, indistinctness, or uncertainty in the meaning of the language used in the policy. *Id.* "Language is ambiguous if it is reasonably open to different constructions." *Id.* (quotation omitted). If we find that an insurance policy's language is ambiguous, we construe it in favor of the insured. *Id.*

We will first address Plaintiff's second point on appeal.

In her second point on appeal, Plaintiff contends that the trial court erred in granting summary judgment in favor of American Family and that she is entitled to underinsured motorist coverage because of an ambiguity in the insurance policies' language. Plaintiff contends that the language is ambiguous because the second sentence of the other insurance clause, which states, "[b]ut, any insurance provided under this endorsement for an insured

person while occupying a vehicle you do not own is excess over any other similar insurance," appears to provide insurance coverage while anti-stacking and set-off provisions in the policies indicate that such coverage is not provided.

In order for Plaintiff's argument to have any merit, we must first determine whether the second sentence of the other insurance clause applies to her. *See Niswonger v. Farm Bureau Town & Country*, 992 S.W.2d 308, 315 (Mo.App. E.D.1999) (finding that an ambiguity only arises in the special factual situation where the accident occurred while the insured was occupying a non-owned vehicle).

According to the terms of both policies, the second sentence of the other insurance clause applies to Plaintiff only if she was "an insured person while occupying a vehicle you do not own" at the time her accident with Smith occurred. It is undisputed that Plaintiff was an insured person under the definition of each policy and that Plaintiff was occupying a vehicle; however, the parties dispute whether the accident occurred while Plaintiff was occupying a vehicle "*you* do not own." Specifically, the parties disagree as to whether the policies' definition of "you" is ambiguous.

■ If a term is defined in an insurance policy, we will normally only look to that definition to determine the term's meaning. *Mansion Hills v. American Family Mut.*, 62 S.W.3d 633, 638 (Mo.App. E.D. 2001). But in order for the policy's definition to control, the definition must be reasonably clear and unambiguous. *Id.* Otherwise, we are free to give a reasonable construction to the term, by applying general contract principles and resolving doubts in favor of the insured. *Id.*

We have previously held that when an insurance policy defined "you" as "(a) the 'named insured' shown in the [d]eclarations; (b) the spouse if a resident of the same household," the policy definition was clear and unambiguous. *State Farm Fire & Cas. Co. v. Berra*, 891 S.W.2d 150, 151, 152 (Mo.App. E.D.1995). The relevant facts in that case were: (1) the husband was the only named insured in the declarations; (2) the definition of "you" was placed in the context of a household exclusion clause specifying that liability coverage does not apply to bodily injury to "you;" and (3) it was undisputed that the husband and wife were living in the same household at the time of the accident. *Id.* at 151, 152. Our court found that under those facts, the policy unambiguously excluded the wife from liability coverage. *Id.* at 152.

■ Here, the term "you" is defined throughout both policies in this case as: "the policyholder named in the declarations and spouse, if living in the same household." Although the definition of "you" in this case is very much like the policy definition of "you" in *Berra*, the facts in this case are distinguishable.

■ The relevant facts in this case are: (1) there are multiple policyholders—the declarations page to both policies states the "policyholder/named insured" is "Chamness, Catherine A and William;" (2) the definition of "you" is placed in the context of an other insurance clause specifying that it applies to Plaintiff only if she was occupying "a vehicle you do not own" at the time her accident with Smith occurred; (3) it is undisputed that only Plaintiff's husband owned the Ford at the time of the accident; and (4) it is undisputed that Plaintiff and Plaintiff's husband were not living in the same household at the time of the accident. Plaintiff asserts that in this context, the definition of "you" is ambiguous because an ordinary person of average understanding would construe the language "*the* policyholder named in

the declarations and spouse, if living in the same household" to apply only to her, the single policyholder who was reading each insurance policy to determine her entitlement to insurance coverage, and her spouse *if* he was living in the same household. Thus, Plaintiff contends one construction of the language "a vehicle you do not own" would indicate a vehicle not owned by her, the single policyholder reading each insurance policy, and a vehicle not owned by her spouse if he was living in the same household. American Family retorts that another construction of the language "a vehicle you do not own" would indicate a vehicle not owned by *any* policyholder and also a vehicle not owned by her spouse if that spouse was living in the same household. We recognize "[t]he fact that the parties disagree over the interpretation of a term in an insurance policy does not render the term ambiguous." *Clark v. American Family Mut. Ins. Co.*, 92 S.W.3d 198, 201 (Mo.App. E.D.2002). Nevertheless, we find that Plaintiff and American Family's interpretations of "you" are both reasonable constructions under the facts of this case.

Plaintiff argues that if American Family wanted the definition of you in the context of the policies' language "a vehicle you do not own" to be understood as a vehicle not owned by multiple or either of two policyholders, it should have used the language "any policyholder," or "either policyholder," instead of "the policyholder." We agree. It was American Family's responsibility to make the policies' language clear and unambiguous and it failed to do so. *See Seeck,* 212 S.W.3d at 134 n. 3.

Accordingly, the policies' language is ambiguous as to whether the accident occurred while Plaintiff was occupying a vehicle "you do not own." Construing this language in favor of Plaintiff, we find the

second sentence of the other insurance clause applied to her.

We will now ascertain whether an ambiguity is created in this case that entitles Plaintiff to relief.

■ Where an insurance policy promises the insured something at one point but then takes it away at another, there is an ambiguity. *Id.* at 133. Specifically, if "an other insurance clause appears to provide coverage but other clauses indicate that such coverage is not provided, then the policy is ambiguous, and the ambiguity will be resolved in favor of coverage for the insured." *Id.* at 134. An other insurance clause appears to provide coverage when it would be interpreted by an ordinary person of average understanding to provide coverage over and above that furnished by the tortfeasor's insurance. *Id.* at 133.

In *Niswonger,* our court found that a similar second sentence of the other insurance clause created an ambiguity when considered with other anti-stacking language in the policy. 992 S.W.2d at 315. In that case, the second sentence of the other insurance clause stated: "However, any insurance provided under this endorsement for a person insured while occupying a non-owned vehicle is excess of any other similar insurance." *Id.* at 315. The anti-stacking language provided:

> OTHER AUTOMOBILE INSURANCE IN THE COMPANY—With respect to any occurrence, accident, death or loss to which this or any other automobile insurance policy issued to the named insured or spouse by the company also applies, the total limit of the company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit under any one such policy. *Id.* at 314–15.

Our court found that a reasonable layperson could construe the second sentence of

the other insurance clause, when read in conjunction with the entire policy, to supersede the anti-stacking provision that would normally and otherwise apply. *Id.* at 318. We thus held that the policy's language was ambiguous in the special situation where the plaintiff was occupying a non-owned vehicle, and allowed the plaintiff to stack underinsured motorist coverage under three separate motor vehicle policies issued by the insurance company. *Id.* at 313, 315, 321.

In *American Family Mut. Ins. Co. v. Ragsdale,* the second sentence of the other insurance clause provided: "But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance." 213 S.W.3d 51, 54 (Mo.App. W.D.2006). The relevant anti-stacking language, found in the underinsured motorist coverage endorsement of each policy, provided:

LIMITS OF LIABILITY

The limits of liability of this coverage as shown in the declarations apply, subject to the following:

1. The limit for each person is the maximum for all damages sustained by all persons as the result of bodily injury to one person in any one accident.

. . .

We will pay no more than these maximums no matter how many vehicles are described in the declarations, insured persons, claims, claimants or policies or vehicles are involved in the accident. *Id.* at 53.

The Western District, following the holding of *Niswonger,* held that the policy language was ambiguous, and allowed the plaintiff to stack underinsured motorist coverage under two separate motor vehicle policies issued by the insurance company. *Id.* at 52, 55, 57.

■ American Family attempts to distinguish *Niswonger* because, in that case, the tortfeasor's vehicle met the definition of an underinsured motor vehicle in that the tortfeasor's liability coverage was less than the limits of liability of the plaintiffs' underinsured motorist coverage.[1] In contrast, it is undisputed here that the definition of an underinsured motor vehicle was not met because Smith's liability overage was the same as the limits of liability as Plaintiff's underinsured motorist coverage.[2] But both the Missouri Supreme Court and the Western District have rejected the notion that an insured is only entitled to underinsured motorist coverage if the definition of an underinsured motor vehicle is met under the policy. *Seeck,* 212 S.W.3d at 132–33; *Ragsdale,* 213 S.W.3d at 56. Furthermore, it is longstanding Missouri law that a court must not interpret an insurance policy provision in isolation, but rather assess an insurance policy as a whole. *Seeck,* 212 S.W.3d at 133. For these reasons, we find that American Family's argument that *Niswonger* is distinguishable lacks merit.

Moreover, we also find that *Ragsdale* is directly on point. In *Ragsdale,* the second sentence of the other insurance clause provided: "But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insur-

---

1. In *Niswonger,* the tortfeasor's policy provided $50,000.00 liability coverage and the plaintiffs had three separate policies providing underinsured motorist coverage of $100,000.00 per person. 992 S.W.2d at 310.

2. Smith's policy provided $100,000.00 in liability coverage and each of Plaintiff's policies provides for $100,000.00 in underinsured motorist coverage.

ance." 213 S.W.3d at 54. That is identical to the language at issue in this point in appeal. The Western District held that there were two constructions to the language "other similar insurance" in this provision:

One construction would indicate that the underinsured motorist coverage provided by the endorsement is excess over *any other applicable* coverage. Another construction . . . would indicate that the underinsured motorist coverage provided by the endorsement is excess over other *underinsured motorist coverage*, and, therefore, because no such coverage exists in this case [in that the definition of underinsured motor vehicle was not met], the excess clause does not apply. *Id.* (emphasis in original).

"Similar insurance" is not defined in either of the insurance policies. Because it is not plainly obvious that a technical meaning was intended, we give the term its ordinary meaning as found in the dictionary. *See Mansion Hills*, 62 S.W.3d at 638. The term "similar" is defined as "[r]esembling though not completely identical." *Ragsdale*, 213 S.W.3d at 56 (quoting *Webster's II New College Dictionary* 1029 (1995)).

Using this definition, identical insurance would mean underinsured motorist coverage. If American Family intended *similar* to mean *other underinsured motorist insurance*, it simply could have stated *other similar underinsured motorist insurance*. It did not do so; this court declines to apply such a construction, and concludes the second sentence of the [o]ther [i]nsurance clause to be ambiguous. *Id.* (emphasis in original).

American Family attempts to attack the Western District's analysis, claiming that "other similar insurance" refers only to other underinsured motorist coverage, citing the following cases: *Kyte v. American Family Mut. Ins. Co.*, 92 S.W.3d 295, 300 (Mo.App. W.D.2002) (finding that the language "other similar insurance" unambiguously refers to other underinsured motorist coverage, not any form of insurance); *Clark*, 92 S.W.3d at 203 n. 1 (finding that "other similar insurance" "can only mean other underinsured motorist coverage, which the tortfeasor's liability coverage is not"); *Niswonger*, 992 S.W.2d at 315 n. 6 (finding "there is no question that the term 'similar insurance' . . . does, in fact, refer to 'other underinsured motorist insurance coverages' "); and *Lang v. Nationwide Mut. Fire Ins. Co.*, 970 S.W.2d 828, 832 (Mo.App. E.D.1998) (finding that the language "other similar insurance" unambiguously refers to other underinsured motorist coverage, not any form of insurance). We find that all of these cases are distinguishable.

*Kyte, Clark,* and *Lang* all did not involve an excess coverage clause. *See Kyte*, 92 S.W.3d at 300; *Clark*, 92 S.W.3d at 201, 203; *Lang*, 970 S.W.2d at 831, 832. The second sentence of the other insurance clause at issue here is an excess coverage clause. Thus, *Kyte, Clark,* and *Lang* are inapplicable to the case at bar. *See Ragsdale*, 213 S.W.3d at 56 (finding that *Lang* was inapplicable to an analysis of an excess coverage clause because it did not involve an excess coverage clause).

Although *Niswonger* involved an excess coverage clause like the clause at issue in this point on appeal, we only found that "there is no question that the term 'similar insurance' . . . does, in fact, refer to 'other underinsured motorist insurance coverages.' " 992 S.W.2d at 315 n. 6. Significantly, we did not state that "other similar insurance" can *only* mean other underinsured motorist coverage. Because our court did not limit the definition of other similar insurance to only encompass other underinsured motorist coverage, and be-

cause it could have done so, we find that *Niswonger* does not limit the expansion of "other similar insurance." Thus, like the Western District, we find that a reasonable construction of the language "other similar insurance" would indicate "any other applicable coverage."

Moreover, an ordinary person of average understanding would interpret the second sentence of the other insurance clause to provide coverage over and above any applicable coverage.

Other language in the policies, the anti-stacking and set-off provisions, indicates that such coverage is not provided. The first set of anti-stacking language, found in the limits of liability section of the underinsured motorist coverage endorsement, states in pertinent part:

> The limits of liability of this coverage as shown in the declarations apply, subject to the following:
>
> 1. The limit for each person is the maximum for all damages sustained by all persons as the result of bodily injury to one person in any one accident.
>
> . . .
>
> *We will pay no more than these maximums no matter how many vehicles are described in the declarations, insured persons, claims, claimants or policies or vehicles are involved in the accident.* (emphasis added).

The second set of anti-stacking language, found in the "Two or More Cars Insured" provision of the general provisions portion of both policies, states: "The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy." The policies' set-off language, found in the limits of liability portion of the underinsured motorist endorsement, provides:

> The limits of liability of this coverage [will] be reduced by:
>
> 1. A payment made or amount payable by or on behalf of any person or organization which may be . . . liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle.

American Family contends that the "Two or More Cars Insured" anti-stacking provision resolves any ambiguity that may be found in the policies. Specifically, American Family cites *Murray v. American Family Mut. Ins. Co.,* 429 F.3d 757 (8th Cir.2005) and *American Family Mut. Ins. Co. v. Martin,* 312 Ill.App.3d 829, 245 Ill.Dec. 384, 728 N.E.2d 115 (2000) for the proposition that when the second sentence of the other insurance clause is read in conjunction with the "Two or More Cars Insured" provision, the "other insurance clause refers only to a situation where a different policy issued by a different company applies." But those cases did not involve an analysis of an excess coverage clause, which is what is at issue in this point on appeal. Rather, they involved an analysis of a first sentence of an other insurance clause—one with proportionate share language. *Murray,* 429 F.3d at 765–66; *Martin,* 245 Ill.Dec. 384, 728 N.E.2d at 117, 118. Thus, *Murray* and *Martin* and are inapplicable to the case at bar. *See Ragsdale,* 213 S.W.3d at 56 (finding that a case not involving an excess coverage clause was inapplicable to an analysis of an excess coverage clause).

Because the second sentence of the other insurance clause appears to provide coverage over and above any other applicable coverage but the anti-stacking and set-off language indicates that such coverage is not provided, the insurance policies' language is ambiguous. We resolve this ambiguity in favor of coverage for Plaintiff.

Plaintiff contends that because of this coverage, she is allowed to stack the $100,000.00 of underinsured motorist coverage provided by each policy.[3] Because we have determined that the second sentence of the other insurance provision creates an ambiguity with respect to the anti-stacking provisions, we must allow Plaintiff to stack the $100,000.00 of underinsured motorist coverage provided by each policy. *See id.*

American Family maintains that Plaintiff's recovery, if any, should be set-off by the amount Plaintiff received from Smith's insurance company.[4] Because we have found that the second sentence of the other insurance provision creates an ambiguity with respect to the set-off provision, American Family is prohibited from setting-off funds Plaintiff received from Smith's insurance company against the underinsured motorist coverage. *See id.*

In conclusion, an ambiguity is created in the policies because the second sentence of the other insurance clause appears to provide coverage over and above any other applicable coverage while the anti-stacking and set-off language indicates that such coverage is not provided. Because we construe ambiguities in favor of Plaintiff, Plaintiff is entitled to underinsured motorist coverage, Plaintiff is entitled to stack her two insurance policies, and American Family is prohibited from setting-off funds Plaintiff received from Smith's insurance company against the underinsured motor-

ist coverage. Therefore, the trial court erred in granting summary judgment in favor of American Family. Point granted.

Because Plaintiff's second point on appeal is dispositive, we find it unnecessary to address Plaintiff's first point on appeal.

Based on the foregoing, we reverse the trial court's judgment and remand with directions to enter judgment in favor of Plaintiff.

GEORGE W. DRAPER III, P.J., and ROBERT G. DOWD, JR., J., Concur.

---

3. We note that because the trial court found that Plaintiff was not entitled to underinsured motorist coverage under either policy, it did not rule on the issue of stacking. Nevertheless, we may consider this issue on appeal because it was raised in the parties' responses to American Family's motion for summary judgment. *See Heffernan v. Reinhold,* 73 S.W.3d 659, 663 (Mo.App. E.D.2002). Because the issue of stacking is before our court and has been fully briefed by the parties, and because this is a question of law almost cer-

tain to arise on retrial, we will address it as a matter of judicial efficiency and economy. *See James v. Paul,* 49 S.W.3d 678, 682 (Mo. banc 2001).

4. We note that the trial court also did not rule on the issue of set-off. Because this issue was raised in the parties' responses to American Family's motion for summary judgment, we will address this issue for the same reasons discussed in footnote 3.