John **KECK** and Jeri Keck,
**Respondents,**

v.

## AMERICAN FAMILY MUTUAL INSURANCE CO.,
**Appellant.**

### No. ED 92750.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 24, 2009.

Amy Surber, St. Louis, MO, for appellant.

Ryan Cox, St. Charles, MO, for respondents.

NANNETTE A. BAKER, Judge.

### Introduction

The appellant, American Family Mutual Insurance Company, appeals from the judgment of the Circuit Court of the City of St. Louis in favor of the respondent, John Keck, finding that the underinsured motorist coverage was not subject to a $50,000 set-off. The appellant now appeals, arguing the trial court erred in failing to reduce the amount of underinsured motorist benefits the appellant owed to the respondent. The judgment of the trial court is affirmed in part and reversed in part.

### Background

The parties stipulated to the following facts. Ji Wei Ni, the tortfeasor, ran a red light, striking the respondent while he was driving a vehicle owned by the respondent's employer. The respondent sustained $80,000 in damages. The tortfeasor had insurance coverage through Allstate, which had a liability limit of $50,000 for bodily injury per person. The respondent settled with Allstate for $50,000.

At the time of the collision, the respondent had underinsured motorist coverage through the appellant with a limit of $100,000 per person. The respondent filed a petition against the appellant seeking the underinsured motorist coverage. The sole issue before the court was the amount of underinsured benefits the appellant owed the respondent in light of the $50,000 settlement with Allstate. The trial court issued a partial judgment stating that the insurance contract was ambiguous, and such ambiguity was to be construed in the insured's favor. The court held that the respondent's policy limit of $100,000 was

not subject to a $50,000 set-off. Therefore, the appellant was required to pay the respondent $80,000, making his total recovery $130,000.

### Standard of Review

■ As this case was tried by the court, we will affirm its judgment unless "there is no substantial evidence to support it, unless it is against the manifest weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This case requires us to interpret an insurance contract, which is a question of law. *Am. Family Mut. Ins. Co. v. Ragsdale*, 213 S.W.3d 51, 54 (Mo.App. W.D.2006). Therefore, our review is de novo. *Id.* When construing the language of the insurance policy, we apply the meaning which an ordinary person of average understanding would have when purchasing insurance. *Chamness v. Am. Family Mut. Ins. Co.*, 226 S.W.3d 199, 202 (Mo.App. E.D.2007).

### Discussion

The appellant raises the following single point on appeal: whether the trial court erred in denying its request to reduce the respondent's underinsured motorist benefits by $50,000, the settlement amount the respondent received from the underinsured motorist's insurance company.

The portions of the respondent's insurance policy relevant to this appeal are captured in the Underinsured Motorist Endorsement, particularly the Limits of Liability and Other Insurance clauses, and the section this court has entitled the obligation to pay.

[obligation to pay]

**We** will pay compensatory damages for **bodily injury** which an insured person is legally entitled to recover from the owner or operator of an **underinsured mo-**tor vehicle. The **bodily injury** must be sustained by an **insured person** and must be caused by accident and arise out of the **use** of the **underinsured motor vehicle.**

. . .

**We** will pay under this coverage only after the limits of liability under any **bodily injury** liability bonds or policies have been exhausted by payment or judgments or settlements.

. . .

## LIMITS OF LIABILITY

. . .

The limits of liability of this coverage will be reduced by:

1. A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an **underinsured motor vehicle.**

. . .

## OTHER INSURANCE

If there is other similar insurance on a loss covered by this endorsement, we will pay our share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an **insured person** while **occupying** a vehicle **you** (sic) do not own is excess over any other similar insurance.

(bold emphasis in original).

The trial court, relying on *Chamness* found that insurance contract was ambiguous because the Other Insurance clause provides coverage while the Limits of Liability reduces coverage.

■ When an insurance contract is ambiguous, the ambiguity is construed

against the insurer. *Ragsdale,* 213 S.W.3d at 55. An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language used in the policy. *Id.* The language of an insurance policy is ambiguous when it is open to more than one construction. *Chamness,* 226 S.W.3d at 202.

■ The Limits of Liability and the Other Insurance clauses of the insurance contracts in both *Chamness* and *Ragsdale* are virtually identical to the clauses in the case at bar. The Other Insurance clause provides that the underinsured motorist coverage will be "excess" over any similar insurance when the insured is injured in a vehicle he or she does not own. Under this clause, the respondent's underinsured motorist coverage limits will not be reduced by any amount he recovers from the tortfeasor. See *Chamness,* 226 S.W.3d at 208; *Ragsdale,* 213 S.W.3d at 57. Therefore, under this clause, the respondent's $100,000 maximum coverage cannot be reduced by the $50,000 he received from the tortfeasor's insurance carrier. Under the Limits of Liability clause, the "limits of liability of this coverage will be reduced by . . . a payment made or amount payable by or on behalf of any person or organization which may be legally liable." Under this clause, the respondent's liability coverage would be reduced by the $50,000 payment from the tortfeasor's insurance. See *Chamness,* 226 S.W.3d at 208. The two clauses are contradictory, and the resulting ambiguity is construed in favor of the insured. *Id.*

■ The appellant admits that it is not entitled to set-off the respondent's liability coverage. Instead, it argues that it is entitled to reduce the damages the insured can recover. The appellant makes a distinction between limiting the liability coverage and reducing the recoverable damages. We agree.

The case before us is distinguishable from *Ragsdale* and *Chamness.* In these cases, American Family Mutual Insurance did not seek to reduce the amount of the insured's damages, but sought to reduce the limits of liability coverage. Neither of these cases examines the obligation to pay clause, or how that clause reduces the amount of compensatory damages the underinsured motorist carrier will pay to the insured.

The obligation to pay clause states: "We will pay *compensatory damages* for bodily injury *which an insured person is legally entitled to recover* from the owner or operator of an underinsured motor vehicle." (emphasis added). The pay clause does not limit the insured's liability coverage. Instead, the clause reduces the compensatory damages that the insurer will pay to those damages that the insured is legally entitled to recover. In this case, the insured's damages were $80,000. He recovered $50,000 from the tortfeasor's insurance carrier. He is no longer legally entitled to recover $80,000 from the tortfeasor. *Wendt v. Gen. Accident Ins. Co.,* 895 S.W.2d 210, 216–17 (Mo.App. E.D. 1995) ("We find that the husband is not 'legally entitled to recover' from the underinsured motorist any funds already received by him in settlement."). He can legally recover $30,000 from the underinsured motorist, not $80,000.

In *Wendt,* this court recognized the distinction between setting-off the limits of liability and reducing the recoverable damages. *Id.* The insured in that case argued that the trial court erred in reducing the amount of damages because the insurance policy only says "there should be a set-off against the upper limit of liability." *Id.* at 217. The court examined the pay clause, which stated the insurance carrier would only pay "damages which a covered person is legally entitled to recover," and conclud-

ed that an insured is not legally entitled to recover funds already received from the underinsured motorist. *Id.* The court stated that "[a]ny other construction would conflict with the underlying purpose of the underinsured motorist coverage—to place the insureds in the position they would have been in had the tortfeasor been adequately insured." *Id.*

The respondent argues that the Other Insurance clause is not limited to determining the insured's liability coverage. The Other Insurance clause provides: "But, any *insurance* provided under this endorsement for an **insured person** while **occupying** a vehicle **you** (sic) do not own is excess over any other similar insurance." (bold emphasis in original, italicized emphasis added). He asserts that the word "insurance" in the Other Insurance clause includes the amount of compensatory damages the appellant will pay. Therefore, he claims the underinsured motorist endorsement is ambiguous because under the pay clause, the damages must be reduced, while under the Other Insurance clause, the damages are "excess" over the amount received from the tortfeasor. According to the respondent, the appellant failed to specify that the Other Insurance clause applied to only the amount of available coverage. We disagree.

When construing the language of an insurance policy, we apply the meaning employed by an ordinary person of average understanding if he or she were purchasing insurance. *Chamness,* 226 S.W.3d at 202. Merriam–Webster's defines "damages" as "compensation in money imposed by law for loss or injury." [1] Merriam–Webster's also defines insurance as "coverage by contract whereby one party under-

takes to indemnify or guarantee another against loss by a specified contingency or peril." [2] An ordinary person of average understanding would interpret the word "damages" in the pay clause to refer to the monetary value of a loss or injury, while he or she would interpret the word "insurance" in the Other Insurance clause to refer to the contract to indemnify for the loss. Nothing in the Other Insurance clause would lead the ordinary person to the conclusion that insurance means the monetary value of the injury sustained. In this case, the words "insurance" and "damages" are not synonymous, and they do not create any duplicity, indistinctness or uncertainty in the meaning of the policy. While the Other Insurance clause is ambiguous when read in conjunction with the Limits of Liability clause, there is no ambiguity when reading the Other Insurance clause with the obligation to pay clause.

The respondent relies on *Krombach v. Mayflower Ins. Co.,* 827 S.W.2d 208 (Mo. banc 1992) and *Keating v. Gavrilovici,* 861 S.W.2d 205 (Mo.App. E.D.1993). These cases are distinguishable. In *Krombach,* the insurance contract at issue referred to both the tortfeasor's total liability and the underinsured motorist coverage limits as "amounts payable." *Krombach,* 827 S.W.2d at 211. The court concluded that set-off would be applied to the total damages, and would not reduce the liability coverage. In this case, the Uninsured Motorist Endorsement does not refer to the insured's damages and the limits of liability with the same word, and the holding of *Krombach* is inapplicable.

Similarly, in *Keating,* the limits of liability section stated: "Any amounts otherwise

---

1. Available at http://www.merriam-webster. com/dictionary/damages (last visited November 12, 2009).

2. Available at http://www.merriam-webster. com/dictionary/insurance (last visited November 12, 2009).

payable for damages under this coverage shall be reduced by ... all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible." *Keating*, 861 S.W.2d at 207. The court found this language unambiguous and applied the set-off to the underinsured liability coverage limits. *Id.* at 208. This case is distinguishable because the *Keating* court evaluated the limits of liability, not the amount of damages the insured was legally entitled to recover. Setting-off the insured's total damages was not an issue in *Keating* because the insured's damages exceeded his underinsured motorist's liability coverage. Further, the insurance contract in *Keating* did not contain an Other Insurance clause and the language limiting the liability coverage was located in the section entitled "Limit of Liability."

We hereby grant the appellant's first point. The trial court erred when it failed to reduce the amount of recoverable damages by the amount the insured received from the tortfeasor's insurance carrier. Pursuant to Missouri Supreme Court Rule 84.14, which grants this court power to "give such judgment as the court ought to give," we enter judgment in favor of the respondent and against the appellant in the amount of $30,000.00 for underinsured motorist benefits.

### Conclusion

For the foregoing reasons, we affirm the portion of the judgment finding in favor of the respondent, but reverse that part of the judgment awarding damages in excess of $30,000.

KATHIANNE KNAUP CRANE, P.J., and CLIFFORD H. AHRENS, J., concur.