# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-3100

_____

Joseph B. Wise; Toni M. Wise,     *
                                  *

           Appellant,            *

                                  *    Appeal from the United States

     v.                             *    District Court for the

                                  *    Eastern District of Missouri.

American Standard Insurance Company  *
of Wisconsin,                       *

                                  *

           Appellee.             *

_____

Submitted: March 15, 2012
Filed: May 30, 2012

_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Joseph B. Wise and Toni M. Wise, husband and wife, ("the Wises") appeal from the district court's grant of summary judgment in favor of American Standard Insurance Company of Wisconsin ("American Standard"). The district court[1] concluded that the Wises were not entitled to recover underinsured motorist (UIM) coverage benefits under four American Standard policies because the tortfeasor's

_____

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

vehicle was not an "underinsured motor vehicle" under the policies' plain language. We affirm.

## I. *Background*

On March 19, 2008, Joseph Wise was involved in an automobile accident in Missouri when Charles Jackson's vehicle negligently collided with Joseph Wise's vehicle. The automobile accident occurred during the course of Jackson's employment with Macklin Hauling ("Macklin"). Joseph Wise's son, John Wise, was a passenger in his father's vehicle at the time of the accident. Both Joseph and John Wise suffered significant injuries. Empire Fire and Marine Insurance Company ("Empire") insured Jackson and Macklin, providing $1,000,000 of automobile liability coverage. Empire settled the Wises' injury claims on behalf of its insureds for the policy limit of $1,000,000. American Standard and the Wises stipulate that the Wises' damages are $1,500,000. *Wise v. Am. Standard Ins. Co. of Wis.*, No. 4:10CV00668 AGF, 2011 WL 3880580, at *1 (E.D. Mo. Sept. 2, 2011).

Both Joseph Wise and Toni Wise were listed on the title as owners of the wrecked vehicle. The Wises had an American Standard automobile liability policy covering this vehicle, as well as three additional American Standard automobile liability policies that each covered a different vehicle. "Each of the four policies issued to [the Wises] provided for UIM coverage of up to $100,000 per person and $300,000 per accident." *Id*. All four policies contain the following provision:

PART VI—GENERAL PROVISIONS

* * *

3.    Two or More Cars Insured. The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy.

-2-

When this policy insures two or more cars, the coverages apply separately to each car.

All four policies also contain a UIM Coverage Endorsement, which provides, in relevant part:

We will pay compensatory damages for bodily injury which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by an accident and arise out of the use of the underinsured motor vehicle.

* * *

ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT ONLY

* * *

3.    Underinsured motor vehicle means a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of liability of this Underinsured Motorists coverage.

* * *

LIMITS OF LIABILITY

* * *

We will pay no more than [the $100,000/$300,000] maximums no matter how many vehicles are described in the declarations, insured persons, claims, claimants or policies or vehicles are involved in the accident.

The limits of liability of this coverage will be reduced by:

-3-

1.      A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance[,] for loss caused by an accident with an underinsured motor vehicle.

* * *

OTHER INSURANCE

If there is other similar insurance on a loss covered by this endorsement, we will pay our share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance.

American Standard issued all four policies in Illinois, and the Wises are Illinois residents. All of the policies were in effect on the date of the accident.

After the Wises settled with Empire, they demanded UIM coverage from American Standard for $400,000—"the combined UIM coverage in each of the four polices." *Id*. American Standard, however, refused the demand. The Wises filed suit for breach of contract, loss of consortium, and vexatious refusal to pay. American Standard removed the suit to federal district court based on diversity of citizenship.

The parties filed cross-motions for summary judgment. Before the district court, the Wises asserted that Missouri law governed the dispute. Applying Missouri law, they contended that "the policies are ambiguous." *Id*. at *2. Specifically, they argued that "the second sentence in the 'Other Insurance' provision appears to provide UIM coverage, while the anti-stacking and set-off provisions indicate that such coverage is not provided." *Id*. at *2 (footnote omitted). They further argued that the second sentence in the "Other Insurance" provision was ambiguous regarding "the term 'a vehicle you do not own' as applied to co-owners of a vehicle." *Id*. According

-4-

to the Wises, "because they were co-owners of the [wrecked vehicle], neither owned it." *Id.* As a result, "Joseph Wise was in a vehicle [that] he did not own." *Id.* The Wises contended that the district court had to resolve all ambiguities in their favor, "precluding American Standard from denying them UIM coverage under the set-off provision and entitling them to stack the UIM coverage provided in their four insurance policies." *Id.*

In response, American Standard argued that it was entitled to summary judgment under either Illinois or Missouri law because the tortfeasor's car was not an underinsured motor vehicle. American Standard noted that the tortfeasor's liability limit exceeds the Wises' UIM limit even when the four policies are stacked. Additionally, American Standard maintained "that under the unambiguous policy language [it was] entitled to a set-off in the amount [the Wises] received from Empire, and that [the Wises were] prohibited from stacking the UIM coverage provided in their four insurance polices." *Id.*

The district court granted summary judgment in favor of American Standard. First, the district court, applying Missouri law, concluded that "the accident did not arise out of the use of an 'underinsured motor vehicle'" under the plain language of the UIM Coverage Endorsement because "the tor[t]feasor's vehicle carried liability insurance of $1,000,000. Such amount is both greater than [the Wises'] UIM coverage of $100,000 for each policy, and greater than the aggregate UIM coverage of all four policies, if [the Wises] were permitted to stack them." *Id.* at *4. Second, the district court, reading the policy as a whole, concluded "that the phrase 'a vehicle you do not own' in the second sentence of the Other Insurance provision of the policies" was not ambiguous based on the Missouri Supreme Court's prior holding "that [a] plaintiff . . . injured in a motor vehicle accident owned the car in question" even though he "owned the car 'jointly with his father.'" *Id.* (quoting *Lair v. Am. Family Mut. Ins. Co.*, 789 S.W.2d 30, 32 (Mo. 1990)). Therefore, the court concluded that "the second sentence of the Other Insurance provision does not apply to [Joseph Wise], and the

-5-

anti-stacking and set-off provisions in the policies are not rendered ambiguous as to [the Wises'] claims." *Id*. at *5.

## II. *Discussion*

On appeal, the Wises argue that the district court erroneously found that (1) the tortfeasor's vehicle was not an "underinsured motorist vehicle," leaving the Wises without benefits under the UIM policies; (2) the Wises could not "stack" their four UIM policies; and (3) American Standard may "set-off" liability payments made to the Wises from the four UIM policies.

"We review de novo the district court's grant of summary judgment based on its interpretation of insurance policy provisions." *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012). A district court properly grants summary judgment "if there is no genuine issue of material fact and the insurer[] [is] entitled to judgment as a matter of law." *Id*. "State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship." *Id*. For the purposes of this appeal, we will assume, without deciding, that Missouri law governs the dispute, as the Wises claim.

The four policies at issue define an "underinsured motor vehicle" as "a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of liability of this Underinsured Motorists coverage." "Under [this] type of policy . . . , if the other motorist pays as much or more to the insured for bodily injury as the insured has underinsured coverage, then the insured is not permitted to recover under the underinsured coverage." *Melton v. Country Mut. Ins. Co.*, 75 S.W.3d 321, 325 (Mo. Ct. App. 2002).

The Missouri Court of Appeals has noted that

[d]etermining whether the definition of an underinsured motor vehicle is met is not a threshold issue to determine whether the insured is entitled to underinsured motorist coverage. [*Goza v. Hartford Underwriters Inc. Co.*, 972 S.W.2d 371,] 375 [(Mo. Ct. App. 1998)]. "Where the definition of underinsured was identical to the one in the [insurer's] policy and was found to be unambiguous . . . the insured can still be entitled to [underinsured motor vehicle] benefits even though that definition is not met if the policy's [underinsured motor vehicle] provisions when read together give rise to such an ambiguity." *Id*.

*Am. Family Mut. Ins. Co. v. Ragsdale*, 213 S.W.3d 51, 54 (Mo. Ct. App. 2006) (fourth, fifth, sixth, and seventh alterations in original).

In *Ragsdale*, the tortfeasor's automobile insurance policy provided $100,000 coverage. *Id*. at 53. The plaintiffs had insurance for their personal vehicles under two policies, "each having underinsured motorist coverage in the amount of $100,000." *Id*. The plaintiffs "made a $200,000 demand upon [their insurer]." *Id*. The Missouri Court of Appeals found that "an isolated reading of the definition of 'underinsured motor vehicle' forbids coverage." *Id*. at 55–56. However, reading the insurance provisions together, the court concluded that the "Other Insurance clause" of the policies was ambiguous. *Id*. at 56. After determining that "the excess clause of the Other Insurance provision [was] ambiguous," the court held that it "must allow stacking of policies in consideration of the ambiguity the Other Insurance clause creates with respect to the anti-stacking provision." *Id*. at 57. The court also found that "the same ambiguity prohibits [the insurer] from setting-off monies received by the [insureds] from [the tortfeasor's] liability policy or workers' compensation benefits against the underinsured motorist coverage in light of the ambiguity the Other Insurance clause creates with respect to the set-off provisions of the policies." *Id*.

Similarly, in *Chamness v. American Family Mutual Insurance. Co.*, the tortfeasor "had bodily injury liability insurance coverage in the amount of $100,000.00 per person and $300,000.00 per occurrence." 226 S.W.3d 199, 201 (Mo. Ct. App. 2007). At the time of the accident, the plaintiff and her husband were not living together, but they were "both insured under two automobile insurance policies" that covered different vehicles. *Id*. "Both policies provid[ed] for underinsured motorist insurance coverage for bodily injury in the amount of $100,000.00 per person and $300,000.00 per accident." *Id*. The insurer argued that the plaintiff could not recover "under the unerinsured motorist coverage endorsement of either policy because her collision with [the tortfeasor] did not occur with an underinsured motor vehicle, as [the tortfeasor's] bodily injury liability coverage equaled the underinsured motorist coverage of each of [the] [p]laintiff's insurance policies." *Id*. at 202. In response, the plaintiff asserted that an ambiguity in the policies "entitled [her] to underinsured motorist coverage under both policies"; permitted her "to stack the $100,000.00 of underinsured motorist coverage provided by each policy"; and prevented the insurer from "set[ting]-off the amount recovered from [the tortfeasor's] insurance company." *Id*.

On appeal, the Missouri Court of Appeals addressed the stacking issue first. *Id*. Analyzing "the other insurance clause," the court determined that "the policies' language is ambiguous as to whether the accident occurred while [the] [p]laintiff was occupying a vehicle 'you do not own.' Construing this language in favor of [the] [p]laintiff, [the court] f[ound] [that] the second sentence of the other insurance clause applied to her." *Id*. at 204. Then, the court applied *Ragsdale* and held that "[b]ecause the second sentence of the other insurance clause appears to provide coverage over and above any other applicable coverage but the anti-stacking and set-off language indicates that such coverage is not provided, the insurance policies' language is ambiguous." *Id*. at 207. The court construed this ambiguity in the plaintiff's favor. *Id*. "Because [the court] . . . determined that the second sentence of the other insurance provision create[d] an ambiguity with respect to the anti-stacking provisions, [the

court] . . . allow[ed] [the] [p]laintiff to stack the $100,000.00 of underinsured motorist coverage provided by each policy." *Id.* at 208. Finding that the "[p]laintiff's second point on appeal [was] dispositive, [the court] *f[ound] it unnecessary to address [the] [p]laintiff's first point on appeal*"—i.e., whether the plaintiff was entitled to underinsured motorist coverage under both policies. *Id.* (emphasis added).

In the present case, the Wises are not entitled to recover under the UIM policies *even if* they are stacked, thereby distinguishing the present case from *Ragsdale* and *Chamness*. The amount of the tortfeasor's liability insurance—$1,000,000—is both greater than the Wises' UIM coverage of $100,000 for each policy *and* greater than the aggregate—or stacked—UIM coverage for all four policies—$400,000. Thus, the district court correctly concluded that the Wises are not entitled to recover under the UIM policies because stacking them still does not result in an amount exceeding the tortfeasor's liability insurance.[2]

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

—————————————————

———————————

[2]As the district court noted, "American Standard's UIM Coverage Endorsement clearly states that a vehicle will be considered underinsured when its liability coverage is less than the insured's UIM coverage." *Wise*, 2011 WL 3880580, at *4. In the present case, "the tor[t]feasor's vehicle carried liability insurance of $1,000,000. Such amount is both greater than Plaintiffs' UIM coverage of $100,000 for each policy, and greater than the aggregate UIM coverage of all four policies, if Plaintiffs were permitted to stack them." *Id.* As a result, "the accident did not arise out of the use of an 'underinsured motor vehicle.'" *Id.*