IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 22, 2020 Session

**PENNY WILSON v. WEIGEL STORES, INC.**

**Appeal from the Circuit Court for Knox County**
**No. 1-374-17      Kristi M. Davis, Judge**

_____

**No. E2019-00605-COA-R3-CV**

_____

This is a premises liability action in which the plaintiff filed suit against the defendant convenience store for personal injuries resulting from her slip and fall near the gasoline pump. The trial court granted the defendant's motion for summary judgment, holding that the plaintiff failed to establish that the defendant caused or created or should have discovered with reasonable diligence the condition that caused her fall. The plaintiff appeals. We reverse the trial court's decision. We remand this case for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Ameesh A. Kherani, Knoxville, Tennessee, for the appellant, Penny Wilson.

Karen G. Crutchfield and Margo J. Maxwell, Knoxville, Tennessee, for the appellee, Weigel Stores, Inc.

**OPINION**

**I.      BACKGROUND**

On the morning of January 22, 2017, Plaintiff Penny Wilson went to Weigel Stores, Inc. ("Weigel's"), a gas station and convenience store operating in Dandridge, Tennessee. Plaintiff pulled into Weigel's and parked her car at the gasoline pump. She then began fueling the car and cleaning out the back of the car. Before she could retrieve the trash from her vehicle, Plaintiff slipped and fell. Another customer ("the witness"), described as an older gentleman from Boston, heard Plaintiff's cries for help and came to

her aid. The witness alerted the gas station attendant, Heaven Henderson, to Plaintiff's need for emergency assistance. Heaven Henderson wrote the witness's contact information on her arm. The store manager, Tammy Henderson, took photographs[1] of the area while Emergency Medical Services ("EMS") personnel tended to Plaintiff. Tammy Henderson then notified her district manager, completed an original incident report, and prepared a written statement, along with Heaven Henderson. Tammy Henderson handwrote the witness's contact information on the typed original incident report that she submitted to the district manager.

On October 10, 2017, Plaintiff filed suit for injuries she sustained as a result of the fall, claiming that Weigel's "was aware and/or in the exercise of reasonable care, should have been aware of a gasoline spill in the parking lot where the Plaintiff was pumping fuel, but [Weigel's] had failed to properly clean up the same and/or otherwise warn the Plaintiff of same." Weigel's denied liability, claiming that Plaintiff fell as a result of her own negligence rather than any conditions on the premises.

The case proceeded through discovery. Plaintiff, Tammy Henderson, Emergency Medical Technicians ("EMTs") Adam Newman and Steve Helton, and Weigel's former HR representative, Michell Daugherty, were deposed. In recalling the accident at Weigel's, Plaintiff testified that her foot slipped backward, causing her to fall forward. Plaintiff admitted that she did not see any oil, gas, or spills before or after her fall and that during prior visits to the convenience store, she found the parking lot areas "nice" and "clean." However, she claimed that the EMTs both slipped and almost fell while tending to her. EMT Newman testified that it had been raining earlier that day, and that Plaintiff "was laying in between the car and the gas pump" when he and EMT Helton arrived to the scene. EMT Newman recalled, "we laid a sheet down to roll [Plaintiff] over because there was water from where the vehicles had dripped and stuff, but it didn't appear to have gas or oil or anything." Both EMTs testified that they did not see any oil or spilled gasoline in the location where Plaintiff fell. Also, they did not observe any hazardous conditions or smell gasoline, other than the general smell of a gas station, while tending to Plaintiff. EMT Helton elaborated, "we had to move [Plaintiff's] vehicle in order to roll her . . . . [and] [w]hen we rolled her over I put a blanket down on the ground, because

---

[1] In her deposition, Tammy Henderson testified as follows:

> Q. You looked at the pictures, of course, when you took them shortly after the accident, correct?
> A. Yes.
> Q. When you went out you did see based on the pictures there were wet spots where [Plaintiff] fell, correct?
> A. There was wet spots.

where her car was at there was oil just from where cars had pulled in and out, to keep her from rolling into the oil."

Tammy Henderson testified that, at the time the witness entered the store to report Plaintiff's fall, Heaven Henderson had just come inside from cleaning the gas pumps and filling the water, paper towels, and windshield washer fluid. As to the original incident report, Tammy Henderson clarified that the district manager picked it up on the Monday following Plaintiff's fall. Thereafter, the original report containing the witness's contact information was lost. A few days after Plaintiff's fall, Tammy Henderson printed and filled in a second incident report, but it lacked the witness contact information.[2] Michell Daugherty made a third incident report based on a telephone call with Plaintiff. In the third report, Michell Daugherty described the incident as follows: "Pumping gas, slipped and fell, not for sure if it was slick from oil or gas. [Plaintiff] was told by EMT that it could have been oil or gas but wasn't for sure." Plaintiff's fall was recorded on Weigel's surveillance cameras. Tammy Henderson stated that she and other employees watched the surveillance video of the accident on the date it happened. Weigel's lost the video due to an alleged power surge and hard drive failure within 72 hours of Plaintiff's fall.

Based on the loss of the video footage, Plaintiff filed a motion for sanctions for spoliation of evidence in which she sought an inference of negligence against Weigel's. The trial court agreed that spoliation had occurred, but ruled that the loss was not intentional or due to misconduct. The court held that the proper sanction was to prohibit any testimony concerning the contents of the video at trial.

Weigel's moved for summary judgment, claiming that Plaintiff could not recover because she was unable to identify the cause of her fall. Plaintiff claimed that summary judgment was inappropriate because genuine issues of material fact remained. She provided an affidavit from Professional Engineer Ronald Corum in support of her response and claimed that his affidavit created an issue of fact. Weigel's moved to strike the affidavit, arguing that Mr. Corum's testimony was contrary to the facts in evidence and not appropriate expert testimony. Mr. Corum opined that it was more likely than not that Plaintiff slipped and fell in gasoline/detergent. He opined that Weigel's was negligent in maintaining its premises and should have used precautionary measures, such as oil dry and/or periodic pressure washing to prevent such dangerous conditions.

Prior to the summary judgment hearing, Plaintiff again raised the issue of spoliation and claimed that Weigel's was also at fault for losing the contact information of the witness who first tended to Plaintiff after her fall. Plaintiff argued that Weigel's

---

[2] The fact that Weigel's had lost the witness's contact information was first revealed through Tammy Henderson's deposition testimony on January 21, 2019.

should not be permitted to move forward on the motion for summary judgment as a result of the loss of the video and the contact information.

On February 15, 2019, the trial court heard all pending motions. At the hearing, Plaintiff argued that Michell Daugherty's third incident report revealed genuine issues of material fact. By order entered March 8, 2019, the trial court granted summary judgment, finding that "Plaintiff cannot identify what caused her fall" and that "[h]er speculation is nothing more than a guess." The trial court held that Plaintiff could not show that Weigel's caused or created the condition or should have discovered the condition with reasonable diligence. The court further found that Mr. Corum's opinions were inappropriate and not based on established facts in the record. The court also denied Plaintiff's request to deny the summary judgment motion based upon the alleged spoliation of evidence because neither loss was intentional or for the purpose of concealing evidence. The court noted that Plaintiff had not suffered significant prejudice as a result of the losses of evidence. This appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether the trial court erred in granting summary judgment.

B.    Whether the trial court abused its discretion by not finding an inference of negligence against Weigel's as a sanction for the spoliation of evidence.

C.    Whether Weigel's is entitled to attorney fees on appeal.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Therefore, "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been

satisfied." *Id*. In evaluating the evidence in the summary judgment context, we must view the evidence in the light most favorable to the nonmoving party, and we must draw all reasonable inferences in favor of that party. *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 202, 373-74 (Tenn. 2007); *see also Acute Care Holdings, LLC v. Houston Cnty*., No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must either submit evidence "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id*. at 265 (quoting Tenn. R. Civ. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." Tenn. R. Civ. P. 56.06.

## IV.   DISCUSSION

### A.

A premises liability claim is one of negligence, requiring the plaintiff to prove five essential elements:

> (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause.

*Biscan v. Brown*, 160 S.W.3d 462, 478-79 (Tenn. 2005) (citing *Coln v. City of Savannah*, 266 S.W.2d 34, 39 (Tenn. 1998) *overruled on other grounds by Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000)). "Premises liability stems from superior knowledge of the condition of the premises." *Keirsey v. K-VA-T Food Stores Inc*., No. E2018-01213-COA-R3-CV, 2019 WL 1301758, at *4 (Tenn. Ct. App. Mar. 20, 2019). Accordingly, in addition to the elements of negligence, the plaintiff must prove that the defendant had either actual or constructive notice of the injury-causing condition by showing that either:

(1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner had actual or constructive notice that the condition existed prior to the accident.

*Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014) (quoting *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)). Further, "a plaintiff is required to prove that the injury was a reasonably foreseeable probability and that some action within the defendant's power more probably than not would have prevented the injury." *Dobson v. State*, 23 S.W.3d 324, 331 (Tenn. Ct. App. 1999).

"Tennessee courts have 'always been empowered to decide legal questions upon agreed facts.'" *Rye*, 477 S.W.3d at 262 (quoting Judy M. Cornett, *Trick or Treat? Summary Judgment in Tennessee After Hannan v. Alltel Publishing Co.*, 77 Tenn. L. Rev. 305, 311-312). "Tennessee Rule 56 'simply embodies the common law's recognition that if there is no factual dispute, there is no need for trial.'" *Id*. Here, Plaintiff as the nonmoving party "must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Rye*, 477 S.W.3d at 265.

Having reviewed the record and viewing the evidence in the light most favorable to Plaintiff, as we are obliged to do, we hold that Plaintiff offered proof to establish that a question remained as to whether an injury-causing condition existed on Weigel's property. For instance, the photographs marked as exhibits to the depositions show what could be characterized as damp conditions on the pavement around the gasoline pump where Plaintiff fell. Plaintiff testified that the EMTs both slipped and almost fell while tending to her, but both EMTs testified that they did not see any oil or spilled gasoline in the location where Plaintiff fell. Three incident reports were made, one of which describes the incident as: "Pumping gas, slipped and fell, not for sure if it was slick from oil or gas. [Plaintiff] was told by EMT that it could have been oil or gas but wasn't for sure." These factual disputes bear directly on the question of whether Weigel's caused or created any injury-causing condition or had actual or constructive notice of any such condition before Plaintiff fell on the premises. With these considerations in mind, we conclude that the trial court erred in granting the motion for summary judgment at this point in the proceedings because material questions of fact remained. In so concluding, we express no opinion as to whether a condition actually existed.

B.

Plaintiff argues that the trial court should have imposed an inference of negligence due to Weigel's spoliation of evidence. She claims that such an inference was appropriate when Weigel's effectively concealed the loss of the witness's contact information by completing a second incident report without first advising Plaintiff of the loss. Weigel's responds that the trial court *did* impose sanctions in its earlier ruling barring any testimony concerning the contents of the lost surveillance video at trial, and that further sanctions were unwarranted. The trial court addressed the spoliation issue in its final order by specifically denying Plaintiff's request to deny Weigel's summary judgment motion based upon the alleged spoliation of evidence. The trial court reasoned that neither Weigel's losing the witness's information nor its losing the video was intentional or for the purpose of concealing evidence.

When evidence has been destroyed, the trial court has the discretion to impose sanctions on the spoliating party, including the use of a negative inference, "based upon a consideration of the totality of the circumstances." *Tatham v. Bridgestone Americas Holding*, 473 S.W.3d 734, 746 (Tenn. 2015). In making this determination, the trial court should consider such factors as:

> (1) the culpability of the spoliating party in causing the destruction of the evidence, including evidence of intentional misconduct or fraudulent intent;
>
> (2) the degree of prejudice suffered by the non-spoliating party as a result of the absence of the evidence;
>
> (3) whether, at the time the evidence was destroyed, the spoliating party knew or should have known that the evidence was relevant to pending or reasonably foreseeable litigation; and
>
> (4) the least severe sanction available to remedy any prejudice caused to the non-spoliating party.

*Id*. at 746-47. In *Tatham*, the Tennessee Supreme Court stated that there is "no reason to continue the requirement of intentional misconduct for the imposition of sanctions for the spoliation of evidence," and that "[w]hether the conduct involved intentional misconduct simply should be one of the factors considered by the trial court." *Id*. at 746.

This court reviews a trial court's choice and imposition of discovery sanctions under an abuse of discretion standard. *Alexander v. Jackson Radiology Assocs.*, 156 S.W.3d 11, 14 (Tenn. Ct. App. 2004) (citing *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699

(Tenn. 1988)). An abuse of discretion occurs where the trial court has applied an incorrect legal standard or where its decision is illogical or unreasoned and causes an injustice to the complaining party. *See Mercer v. Vanderbilt Univ., Inc*., 134 S.W.3d 121, 131 (Tenn. 2004). "We are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

In this case, it is undisputed that Weigel's had control of and lost two important pieces of evidence, the witness's contact information and the surveillance video. This deprived Plaintiff of the opportunity to have the trier of fact view the video and consider the witness's testimony. We will not disturb the trial court's ruling not to impose an inference of negligence against Weigel's. However, at trial, Plaintiff should be permitted to testify broadly about her interaction with the missing witness, including the content of their conversation.

C.

Weigel's requests its costs, expenses, and reasonable attorney fees on appeal pursuant to Tennessee Code Annotated section 27-1-122, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The decision whether to award damages for a frivolous appeal rests solely in our discretion. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009). "A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." *Indus. Dev. Bd. v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). We find that this appeal is not frivolous and accordingly decline Weigel's request for costs, expenses, and attorney fees on appeal.

## V.    CONCLUSION

We reverse the decision of the trial court as to the grant of summary judgment. The case is remanded for proceedings consistent with this opinion. Costs of the appeal are taxed to the appellee, Weigel Stores, Inc.

_____
JOHN W. McCLARTY, JUDGE